**INTERPANE COATINGS, INC., a Wisconsin corporation, Plaintiff,**

v.

**AUSTRALIA AND NEW ZEALAND BANKING GROUP LIMITED a foreign bank, Defendant.**

No. 89 C 7959.

United States District Court, N.D. Illinois, E.D.

March 8, 1990.

---

Mary Anne Gerstner and Alexander Terras, Burke, Wilson & McIlvaine, Chicago, Ill., for plaintiff.

James M. Breen and Rosanne Clambrone, Chapman & Cutler, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on Defendant Australia and New Zealand Banking Group Limited's ("ANZ's") motion to dismiss Plaintiff Interpane Coatings, Incorporated's diversity action in this court for lack of subject matter jurisdiction, and for improper venue under the common law doctrine of forum non conveniens. For the following reasons, the motion is denied with respect to subject matter jurisdiction but granted on grounds of forum non conveniens.

## BACKGROUND

Underlying this litigation is an international sale of goods run amuck. Interpane, a Wisconsin corporation and the seller in this transaction, delivered the goods to an Australian buyer who then did not pay despite having accepted the goods as well as having endorsed three bills of exchange. In this action, Interpane seeks to hold ANZ, the designated collecting bank in the transaction, liable for its failure to obtain the money from the buyer. ANZ has moved to dismiss the case, asserting a lack of subject matter jurisdiction and common law forum non conveniens.

The relevant facts are as follows: Interpane and an Australian entity named McDowell Pacific Pty., Ltd. entered into a contract for the sale of goods whereby Interpane was to ship goods to Australia and McDowell was to pay for them. As is usual in such cases where delivery and payment are to occur at a distant point, the seller used bills of exchange and lading rather than simply shipping the goods to the buyer in Australia with an invoice.

By using this procedure, Interpane reduced the critical transactional points of tender and acceptance to a mere documentary transfer which made acceptance a condition precedent to tender. But to do so required the aid of middlemen in the form of banks. The banks involved in the transaction at issue in this case were ANZ and the Chicago branch of Swiss Bank Corporation. ANZ, McDowell's bank, was to act as the presenting and the collecting bank. Swiss Bank was designated Interpane's local representative, forwarding and receiving the relevant documents on behalf of Interpane. It was also the named payee on the bills of exchange.

Under the documentary procedure used in this case, Interpane sent ANZ three bills of exchange accompanied by three collection orders and three bills of lading. The bills of exchange were all sight drafts with payment to be due 60 days from McDowell's "seeing" the bill; such bills are often called time drafts as well, in order to distinguish them from sight drafts which are actually payable on sight. In addition, on each bill of exchange was a corresponding collection order, which contained instructions from Interpane to ANZ as the collecting bank setting forth just how ANZ was to go about collecting the money from McDowell. The bills of lading, on the other hand, originated with the shipper and entitled the possessor of them to collect the goods. Finally, in a sort of international

choice of law provision, the documents at issue all provided that the collection and transfer procedure was to be governed by the Uniform Rules for Collection, a set of model rules promulgated by the International Chamber of Commerce and designed to address problems arising in such documentary exchanges.

In the collection orders lay the agreement between Interpane and ANZ which is at the heart of the dispute in this case. They contained the requirements with respect to just what ANZ had to obtain from McDowell before it released the bills of exchange and the all-important bills of lading to that entity. There are two principal types of collection orders, those which require mere acceptance by the drawee/buyer and those which require actual payment. If acceptance is required, the collecting bank need only obtain the endorsement of the drawee/buyer before releasing the title documents. By accepting the bills of exchange, the drawee acknowledges the debt and commits to making payment as required by the bill of exchange (in this case 60 days from sight). However, if the collection order indicates that payment is required, the collecting bank is obligated to wait until it actually receives payment on the bill of exchange from the drawee/buyer before it releases the title documents.

In this case, the standard form used by Interpane indicated that only acceptance was required before releasing the bills of lading. Specifically, it instructed ANZ to "deliver documents against ... acceptance" of each bill of exchange. Although there was space on the form which would have required payment, it was not marked. However, there was also a "special instruction" with respect to collection at the bottom of the form. It stated as follows: "Release documents to drawee only on acceptance by collecting bank for assurance of payment at the 60 days sight terms. Collect interest at 9% per annum from date of acceptance." Thus, Interpane appeared to desire some assurance of payment beyond McDowell's endorsement.

After ANZ received all these documents, it obtained the formal acceptance of McDo-

well but apparently did not understand just what more was required under the special instruction. Accordingly, it dispatched a communication by "telex" to Interpane's representative, Swiss Bank, asking for clarification as to the meaning of the special instruction. When further instructions were not forthcoming in the coming days, ANZ, concerned that the goods were about to go into bond, went ahead and delivered the bills of lading to McDowell, having only secured its endorsement. Ten days after ANZ requested clarification, but after it had released the title documents to McDowell and McDowell had collected the goods, ANZ received instructions that it was not to release the documents without itself signing the bills of exchange as a surety for the debt.

The story of course concludes with McDowell failing to pay the debt it incurred by accepting the bills of exchange. Although it collected the goods as promised, McDowell claimed they were defective and refused to honor its obligation to pay. Interpane now seeks to hold ANZ responsible for the loss.

Interpane filed suit solely against ANZ in this court on October 29, 1989, after first attempting to negotiate with ANZ in Australia. Interpane sued in this district because ANZ maintains an office in Chicago and thus could easily be served with process here. The Chicago office itself, however, has no relationship to this lawsuit.

The complaint contains two counts. The first is a negligence claim under the Uniform Rules of Collections, which the parties agreed would govern the transaction. Article I of the Uniform Rules imposes duties of good faith and reasonable care upon banks acting in such transactions. Interpane alleges that ANZ breached its duty of reasonable care in releasing the bills of lading to McDowell before discovering the nature of the special instruction.

Count II alleges breach of contract. As the designated collecting bank, ANZ had a contractual duty to follow Interpane's collection orders. Interpane alleges that ANZ breached this contractual duty by not obeying the special instruction, which it alleges

required ANZ to endorse the bills of exchange as a guarantor before releasing the title documents to McDowell. Interpane claims damages in the amount of the face value of the promissory notes—a total of $79,208.68. Subject matter jurisdiction is based on diversity of citizenship in that Interpane is a "citizen[ ] of a State," ANZ is a citizen of a "foreign state[ ]" and "the matter in controversy exceeds the sum or value of $50,000." 28 U.S.C. § 1332(a)(2) (West Supp.1989).

ANZ now moves to dismiss the case pursuant to Rules 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure. Under Rule 12(b)(1), ANZ argues that this court lacks subject matter jurisdiction over the case because the amount in controversy does not exceed the threshold $50,000. Under Rule 12(b)(3), ANZ alternatively asserts that venue is improper under the common law doctrine of forum non conveniens and this court should therefore decline to exercise jurisdiction over the case.

## DISCUSSION

### I. Subject Matter Jurisdiction

■ Regardless of the outcome of the forum non conveniens issue, this court must first address ANZ's challenge to the existence of subject matter jurisdiction. This is so even if we ultimately decline to exercise that jurisdiction in this case under the doctrine of forum non conveniens because, in order to decline jurisdiction, we must legitimately have it in the first place. As summarized by Professors Wright and Miller, "[t]he doctrine of forum non conveniens does not come into play unless the court in which the action was brought has both subject matter and personal jurisdiction and is a [statutorily] proper venue." C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3828, at 287 (2d ed. 1986) [hereinafter Wright & Miller] (citations omitted). Nonetheless, we find subject matter jurisdiction to be proper in this case.

■ It is well-established that the amount-in-controversy requirement is adequately met by a good faith allegation of the minimum requirement in the complaint. As stated by the Supreme Court in the seminal case of *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938): "The rule governing dismissal for want of jurisdiction in cases brought in federal court, is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Although the defendant is not absolutely precluded from challenging the plaintiff's claim, in order to succeed, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* 303 U.S. at 289, 58 S.Ct. at 590. The burden, therefore, is a heavy one for the defendant despite the fact that, technically, the actual burden of proof on the jurisdictional issue always lies with the party invoking federal jurisdiction.

■ Under this standard, ANZ clearly fails in its attempt to challenge Interpane's alleged amount in controversy. Interpane's computation of damages is based on the consequence of ANZ's alleged failure to follow Interpane's instruction not to deliver the bills of lading before itself signing the bills of exchange as a guarantor. If ANZ had guaranteed the bills of exchange as a co-signer, it would be liable on the original debt to the same degree as McDowell. Thus, Interpane concludes that ANZ's failure to do so creates a prima facie injury to the extent of the face value of the bills of exchange ($79,208.68), none of which has ever been paid.

ANZ's challenge consists solely of interposing an alleged right to set off from the face value of the notes the salvage value of the goods which McDowell claimed were defective. However, ANZ presents no evidence in support of the actual value of the salvaged goods, nor is it a legal certainty that a set-off would be appropriate in this case. Although ANZ requests discovery on the issue, this is inappropriate because it would tie the jurisdictional issue in too closely with the merits of the case. As the *St. Paul Mercury* Court stated: "The inability of the plaintiff to recover an amount

adequate to give the court jurisdiction does not show his bad faith or oust jurisdiction." 303 U.S. at 288, 58 S.Ct. at 586. We conclude, therefore, that Interpane has sufficiently pled the amount in controversy and diversity jurisdiction is proper.

## II. Forum Non Conveniens

Given that subject matter jurisdiction exists over this case, it remains to address ANZ's argument that this jurisdiction should be declined under the doctrine of forum non conveniens. ANZ takes the position that this is a highly inconvenient forum in which to litigate Interpane's claims and that Australia is the forum where it belongs. We agree.

Forum non conveniens is a common law doctrine of ancient lineage under which a court with otherwise proper jurisdiction and venue can, in its discretion, decline jurisdiction out of deference to a more convenient forum. Although the transfer of venue statute, 28 U.S.C. § 1404(a), has eliminated the doctrine in cases where the more convenient forum is another federal court, it still serves an important administrative function where the better place for the suit is a court of a foreign country. *See* Wright & Miller § 3828, at 278–81. Indeed, it has been written that, in such situations the doctrine has actually grown in importance in recent years due to the tremendous growth of international transactions such as the one at issue in this case. *See generally* Note, *The Convenient Forum Abroad Revisited: A Decade of Development of the Doctrine of Forum Non Conveniens in International Litigation in the Federal Courts,* 17 Va.J.Int'l L. 755, *passim* (1977).

In *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court recognized the validity of common law forum non conveniens in the federal court system and set forth the factors which must go into every forum non conveniens analysis. These factors fall into two main groups: those which address the private interest of the litigants and those which address the public interest of the court system. With respect to the private interest, which was stated to be the

most significant, the *Gulf Oil* Court wrote as follows:

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of the unwilling, and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* 330 U.S. at 508, 67 S.Ct. at 843. Nonetheless:

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the ... law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* at 508–09, 67 S.Ct. at 843. The ultimate decision to dismiss is very fact-specific and lies within the sound discretion of the trial court. *E.g., Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981).

■ Before actually applying these factors to this case, however, we must address two preliminary matters. First, there is a dispute over the degree of deference that must be given to Interpane's chosen forum. The *Gulf Oil* Court cautioned that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Subsequent lower court cases have clarified that this weighting of the scales in favor of the plaintiff is particularly appropriate where the plaintiff is a resi-

dent of the forum he is suing in. But where the plaintiff does not reside in his chosen forum, the court is entitled to be far less deferential toward his choice. *See, e.g., Ionescu v. E.F. Hutton & Co.*, 465 F.Supp. 139, 145 (S.D.N.Y.1979) (citations omitted).

■ Referring to several recent transfer of venue decisions of this court, ANZ takes the position that because Interpane is not a resident of the Northern District of Illinois, its choice of forum is not to be accorded much, if any, deference. However, ANZ ignores the critical distinction between transfer of venue under 28 U.S.C. § 1404(a)—which is concerned with which federal district court is the most convenient—and international forum non conveniens—which is concerned with whether any federal court should hear the case, or whether the plaintiff should be sent off to a foreign country to sue. The lower court progeny of *Gulf Oil* make it explicit that, in forum non conveniens cases involving a potential reference to a foreign court, the relevant distinction is whether or not the plaintiff who has selected the federal forum is an American citizen, not whether he resides in the particular district where the case was brought. *See, e.g., Ionescu*, 465 F.Supp. at 145 ("[w]hen the plaintiff is an American citizen, ... the courts have given some weight to his interest in suing in an American court, above and beyond his convenience in litigating here rather than abroad") (citations omitted). Since Interpane is an American corporation, it is entitled to some deference with respect to litigating in this court. On the other hand, "an American citizen has no absolute right to sue in an American court." *Id.*

■ Interpane also raises one other matter which is preliminary to the convenience factors in that it questions the adequacy of the Australian forum. Specifically, Interpane decries the Australian courts' practice of requiring foreign plaintiffs to pay a se-curity deposit for the defendants' costs upon institution of suit. The deposit is apparently designed to discourage the filing of unwarranted claims. In this case, Interpane would be required to pay an initial deposit of between $8,400 and $12,600 United States dollars in order to maintain its suit in Australia. Interpane does not wish to "expose additional monies to risk" and argues that the deposit requirement disqualifies the Australian forum.

Certainly the application of forum non conveniens presupposes the existence of an adequate alternative forum. And indeed, the Supreme Court itself has noted that the mere ability to maintain a lawsuit in the foreign court will not be sufficient "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all...." *Piper Aircraft*, 454 U.S. at 254, 102 S.Ct. at 265. However, the above rule makes clear that the concern is to be over foreign restrictions on the substantive remedy available and not on more burdensome administrative requirements, as is alleged here. Further, the holding in *Piper Aircraft* demonstrates that even a substantive limitation on recovery must be dramatic in order to disqualify the foreign forum. There, the Court dismissed under forum non conveniens a case filed in federal district court in favor of a Scottish forum despite the fact that Scottish law did not provide for strict liability, while Pennsylvania law—the law which could possibly have been applied in the United States District Court for the Middle District of Pennsylvania—did. Thus, Interpane's challenge to the adequacy of the Australian forum on the ground that it requires a security deposit, while this court would not, is inapposite.

■ Having disposed of all the preliminary issues, we turn to the heart of the forum non conveniens inquiry: the *Gulf Oil* factors.[1] The factors relating to the

---

1. In applying the factors, we assume that the federal standard set forth in *Gulf Oil* applies in this diversity action under the *Erie* doctrine as a procedural rule. Although we need not decide this issue because neither party has argued for the application of Illinois forum non conveniens law, we do note that the only circuit court of appeals to have squarely addressed the issue, long left unresolved by the Supreme Court, has held that the *Gulf Oil* factors apply to the exclusion of state forum non conveniens rules, even in diversity cases. *Sibaja v. Dow Chemical Co.,*

private interest of the litigants will be discussed first, followed by the factors pertaining to the public interest of the relevant forums. In this case, all the factors point unequivocally to the land down under.

### A. *Private Interest*

■ The main factor in assessing the private interest is the convenience of the witnesses. Here, the balance is completely in favor of an Australian forum. Although the witness testimony on the breach of contract claim will likely be about evenly distributed between Interpane and ANZ (the main issue being the meaning of the allegedly ambiguous special instruction), there is no question that Australian witnesses will predominate on the negligence claim. On the negligence issue, precisely what the ANZ employees did in Australia and why they did it will be the only evidence of importance. That this testimony be live is a must on a claim such as negligence where witness credibility is critical. Further, one of ANZ's key occurrence witnesses is no longer an employee and could not be compelled to attend trial here.

Although Interpane attempts to counter by arguing that the testimony of Swiss Bank witnesses will be critical to its case, this is not so. First, with respect to the breach of contract claim, Swiss Bank was not a party to the agreement; thus, its interpretation of the special instruction is irrelevant. Second, with respect to the negligence claim, the only evidence of any importance which Swiss Bank employees could possess would be information concerning whether and when it received the telex inquiry asking for clarification on the special instruction, as well as the date of Swiss Bank's reply. These communications, however, were completely documentary in nature and thus do not require live testimony.

In addition to the witnesses being mainly in Australia, the bulk of discovery will have to occur there. To run discovery from this

federal district would be cost prohibitive to say the least.

Finally, there is the issue of McDowell, the Australian buyer who failed to pay. ANZ has expressed the not unreasonable desire to implead McDowell, who is liable to Interpane on the bills of exchange, not to mention the sale contract itself, but McDowell is not subject to the process of this court. Although Interpane has indicated that it is highly skeptical of McDowell's current existence as an entity, it has provided this court with no concrete evidence for such skepticism.

In short, the interest of the litigants in this case is best served by an Australian forum. Litigating here would be an unconscionable burden for ANZ, especially with respect to the economics of the situation. This burden is particularly unjust in this case where it was Interpane who was acting in an international capacity; ANZ was merely serving as the local collecting bank.

### B. *Public Interest*

■ There is no question that the Northern District of Illinois has no interest at all in this litigation. First, Australian law will likely apply to both the contract claim, and the negligence claim with respect to the definition of reasonableness. Under the Restatement (Second) of Conflicts of Laws, which this court must apply in all diversity cases, *e.g., Safety Mutual Casualty v. Libery Mutual Ins.*, No. 89 C 5386, slip op. at 5 (N.D.Ill. Oct. 31, 1989) (Kocoras, J.) (collecting authorities and rearticulating rule), the law of the jurisdiction with the "most significant contacts" governs both tort and contract claims.

In evaluating tort claims, the following four factors are relevant: (1) the domicile, place of incorporation and place of business of the parties; (2) the place where the tortious conduct occurred; (3) the place where the relationship of the parties is centered; and (4) the place where the injury occurred. With respect to contract

757 F.2d 1215, 1219 (11th Cir.1985). *See also* Wright & Miller § 1328, at 293–94 ("it seems quite clear that [notions of state forum non conveniens] ought not to be [binding on a feder-

al court in a diversity action] and that these are matters of the administration of the federal courts, not rules of decision, so that state rules cannot be controlling.")

claims, the factors are: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) location of the subject matter of the contract; and (5) and the domicile, place of incorporation, and place of business of the parties.

Domicile, etc., a factor common to both contract and tort claims, is evenly divided in this case between Australia and Wisconsin and thus drops out of the analysis. This leaves three factors under tort, two of which clearly lead to Australia law. The place where the allegedly tortious conduct occurred was Australia and the business relationship between Interpane and ANZ in this case is centered in Australia. (The reason Interpane contacted ANZ in the first place was because it was McDowell's bank in Australia.) Only the injury to Interpane occurred in Wisconsin and nothing at all occurred in Illinois. A similar result obtains with respect to the contract claim. Of the four remaining contract factors, three favor Australia. The place of contracting was Australia because it was there that ANZ accepted Interpane's offer to designate it the collecting bank. The place of performance was also Australia because it was there that ANZ was to turn over the bills of lading at the appropriate moment and collect the money from McDowell. Finally, the location of the subject matter of the contract—the money—was in Australia. However, there is nothing to indicate where the negotiations, if any, took place; this factor, therefore, could possibly point to Wisconsin. The contract factors favoring Wisconsin are, therefore, minimal at best and, as under the tort factors, nothing whatsoever favors the application of Illinois law. The result is clear: the most-significant-contacts test yields Australian law on both counts.

In response to this very straightforward application of Illinois choice of law rules, Interpane argues not that Wisconsin law should apply, which is at least colorable, but that *Illinois* law might actually apply. Its reasons are (1) that Swiss Bank is in Illinois and (2) that ANZ does business in Illinois.

These contacts, however, are completely irrelevant for choice of law purposes under any of the conflicts doctrines this court is aware of—and there are many—and certainly under the Second Restatement which does govern here. Swiss Bank's presence in Illinois as an entity is meaningless because it is not a party. Similarly, while the fact that ANZ "does business" in Illinois is certainly relevant to the issue of personal jurisdiction, it is not a "significant contact" under the Second Restatement.

In addition to the weight of the foreign law factor in and of itself, the application of Australian law to this action would require expert testimony to establish the relevant contract principles, as well as other testimony to establish the standard of reasonable conduct under the circumstances with reference to Australian business custom and practice. This added burden affects not only the public interest in avoiding wasted time, but also the private interest in avoiding excessive inconvenience and expense. While Rule 44.1 of the Federal Rules of Civil Procedure have relieved the onerous burden of establishing foreign law as a question of fact, testimony is still highly relevant. *See* Fed.R.Civ.P. 44.1. This is particularly so where the law involved is that of negligence, a legal doctrine hopelessly steeped in fact and community custom and practice. Thus, keeping the case here would likely require even more witnesses from Australia, adding both to the waste of judicial resources and the private expense.

Interpane attempts to counter the difficulties inherent in applying Australian law on the negligence issue by stating that it is governed by the Uniform Rules of Collection, pursuant to agreement by the parties. Specifically, it argues that the Uniform Rules address this precise situation in Article 20(iii)(c). Entitled *"Advice of non-payment or non-acceptance,"* it states as follows:

> The collecting bank must send without delay advice of non-payment or advice of non-acceptance to the bank from which the collection order was received.

The presenting bank should endeavour to ascertain the reasons for such non-payment or non-acceptance and advise accordingly the bank from which the collection order was received.

On receipt of such advice the remitting bank must, within a reasonable time, give appropriate instructions as to the further handling of the documents. If such instructions are not received by the presenting bank within 90 days from its advice of non-payment or non-acceptance, the documents may be returned to the bank from which the collection order was received.

Interpane argues that this provision imposed a duty on ANZ to inform Swiss Bank of its own failure to accept responsibility for the debt as a surety pursuant to the special instruction. It therefore concludes that, because ANZ did not then wait the requisite 90 days to act, and when it did act it did not return the bills of lading to Swiss Bank, its conduct was *per se* unreasonable without regard to the niceties of Australian law.

Interpane, however, grossly misconstrues Article 20(iii)(c). That provision explicitly deals with a situation where the *drawee*, not the collecting bank itself, refuses either to accept the bill of exchange or pay the money, depending on what sort of collection order was made. Here, there is no question but that the drawee/buyer, McDowell, accepted the bill. There is also no question that the generic terms of the collection order only required acceptance and not actual pre-payment. Thus, ANZ's limited obligation under Article 20(iii)(c) was not triggered in any way. Accordingly, if ANZ did act unreasonably, it did so within the general meaning of that term as set forth in Article 1 of the Uniform Rules. Reasonableness in this general sense, however, cannot be determined in a legal vacuum but, rather, must be made with reference to the custom and practice of the industry—in this case, Australian industry.

In short, this forum, when viewed from its position as an enforcer of Illinois law in diversity cases has absolutely no public interest in this litigation. Further, while a Wisconsin federal district court would have

had a slightly greater interest in this case, even if one views this court's interest from a national perspective, a perspective, it should be noted, which is not supported by precedent, the public interest factor still comes out very heavily on the Australian side. When this is coupled with the same lopsidedness in favor of Australia under the private interest inquiry, this court has no trouble exercising its discretion in this case to dismiss the case under the forum non conveniens doctrine. Although we are mindful of the heavy burden placed on ANZ by Interpane's American citizenship, we find the requisite "exceptional circumstances" to have been demonstrated here and conclude, in the words of the Supreme Court, that this is one of "those rather rare cases where the doctrine should be applied." *Gulf Oil*, 330 U.S. at 504, 509, 67 S.Ct. at 840, 843.

For the foregoing reasons, the defendant's motion to dismiss on grounds of forum non conveniens is granted. However, the dismissal is contingent on the accepting of jurisdiction by the Supreme Court of New South Wales as well as on the waiver of any statute of limitations defense which ANZ might have there. It is so ordered.