In re BRIDGESTONE/FIRESTONE, INC., Tires Products Liability Action.

Rodolfo Cisneros,

v.

Bridgestone/Firestone, Inc., et al.

Athenea Gonzalez de Becerra, et al.

v.

Bridgestone/Firestone, Inc., et al.

Hugo Zacarias Sandoval, et al.

v.

Ford Motor Company, et al.

Sofia Lopez de Manez, et al.

v.

Ford Motor Company, et al.

Nos. IP 00–9374–C–B/S, MDL 1373, IP C1–5454–C–B/S, IP 02–5635–C–B/S, IP C3–5787–C–B/S, IP 03–5790–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Feb. 27, 2004.

Don Barrett, Barrett Law Office Pa, Lexington, MS, Victor Manuel Diaz Jr., Podhurst, Orseck, Josefsberg & Eaton, Miami, FL, Mike Eidson, Colson Hicks Eidson, Coral Gables, FL, Irwin B. Levin, Cohen & Malad, Indianapolis, IN, William E. Winingham, Wilson, Kehoe & Winingham, Indianapolis, IN, for plaintiffs.

John H. Beisner, O'Melveny & Myers LLP, Washington, DC, Daniel P. Byron, Bingham McHale LLP, Indianapolis, IN, Mark Herrmann, Jones, Day, Reavis & Pogue, Cleveland, OH, Thomas S. Kilbane, Squire, Sanders & Dempsey LLP, Cleveland, OH, Mark Merkle, Krieg Devault LLP, Indianapolis, IN, Randall Riggs, Locke Reynolds LLP, Indianapolis, IN,

Colin P. Smith, Holland & Knight LLC, Chicago, IL, Thomas G. Stayton, Baker & Daniels, Indianapolis, IN, for defendants.

### ORDER ON DEFENDANTS' MOTION TO DISMISS MEXICAN ACCIDENT CASES ON FORUM NON CONVENIENS GROUNDS

BARKER, District Judge.

Defendants Bridgestone/Firestone North American Tire, LLC, successor to Bridgestone/Firestone, Inc., ("Firestone") and Ford Motor Company ("Ford") (collectively "Defendants") filed a motion to dismiss certain Mexican accident cases on grounds of *forum non conveniens,* and subsequently, a motion to amend their motion to dismiss in order to direct it to all of the cases listed in this caption. For the reasons set forth in detail below, Defendants' motion to amend is *GRANTED,* and Defendants' motion to dismiss these Mexican accident cases for *forum non conveniens* is *GRANTED* with respect to Plaintiffs Salazar, Soto, and Plaintiffs Manez–Lopez and *DENIED* with respect to Cisneros, Plaintiffs de Becerra, Plaintiffs Arjona, and Plaintiffs Sandoval. As a result of this ruling, the case of Sofia Lopez de Manez, et al. (IP 03–5790–C–B/S) is *DISMISSED.*

#### Factual and Procedural Background

Approximately 700 personal injury and wrongful death cases against Ford and/or Firestone have been filed in or removed to federal courts around the country alleging that defects in Ford Explorers and certain models of Firestone tires were responsible for the accidents causing the injuries suffered by Plaintiffs. The cases were transferred to this court by the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, on October 26, 2000. A number of these cases were filed by Plaintiffs who were injured in accidents that occurred in foreign countries, including Mexico. On January 10, 2003, Firestone filed a Motion to Dismiss Mexican Accident Cases on *Forum Non Conveniens* Grounds. This original *forum non conveniens* motion applied to eight cases, only one of which, Rodolfo Cisneros (IP 01–5454–C–B/S), remains pending. However, also in the MDL as of January 10, 2003, but not included in Firestone's motion of that date, was the case of Athenea Gonzalez de Becerra, et. al. (IP 02–5635–C–B/S).[1] Since the filing of Firestone's January 10, 2003 motion, two additional Mexican accident cases have entered the MDL, Hugo Zacarias Sandoval, et al. (IP 03–5787–C–B/S) and Sofia Lopez de Manez, et al. (IP 03–5790–C–B/S).

Before the court is Firestone's Motion to Amend its Motion to Dismiss Mexican Accident Cases on *Forum Non Conveniens* Grounds to include de Becerra, et al.; Sandoval, et al.; and de Manez, et al. Plaintiffs de Becerra, et al., and Sandoval, et al., filed responses thereto. Having considered Firestone's motion to amend and Plaintiffs' responses, the Court determines that it should be *GRANTED.* Firestone's motion to dismiss is hereby amended to reflect the cases listed in the caption.

Next, we turn to the merits of Firestone's motion to dismiss these Mexican cases on grounds of *forum non conveniens.*. Defendants contend consistently that these cases involve Mexican citizens and residents injured in accidents occurring in Mexico. *See, e.g.,* Defs.' Memo. p. 2. Upon closer inspection, however, this description of the fact scenario is not always accurate. The case-specific facts follow.

---

1. This court received, from the Judicial Panel on Multi–District Litigation, a Certified Transfer Order for the de Becerra case on June 27, 2002.

### Rodolfo Cisneros (IP 01–5454–C–B/S)

Plaintiff Rodolfo Cisneros ("Cisneros") alleges in his Complaint that he is a resident and citizen of Mexico. Cisneros Am. Compl. § II, p. 2. However, in our January 10, 2003 Order Denying [Cisneros's] Motion to Remand, we found that Cisneros's deposition testimony established that he is also a permanent resident alien of the United States residing in Texas. *Id.* pp. 2–3. Because Defendants relied on Cisneros's Texas residency to establish its jurisdictional toehold justifying removal of this case to federal court under 28 U.S.C. § 1332(a), they cannot now disclaim it. We will therefore consider Cisneros a U.S. resident Plaintiff for purposes of this motion. Cisneros was injured on September 21, 2000, when a Firestone tire on the 1994 Jeep Cherokee he was driving failed, causing the vehicle to become uncontrollable and to roll over. Compl. § V, p. 6. The accident occurred in Mexico; Cisneros received medical treatment for his injuries in both the U.S. and Mexico. Defs.' Memo p. 3. The allegedly faulty tire was designed and manufactured in the U.S. and/or Canada, and was sold to Cisneros in Weslaco, Texas. *Id.*; Compl. § V, pp. 5–6.

### Athenea Gonzalez de Becerra, et al. (IP 02–5635–C–B/S)

Plaintiff Athenea Gonzalez de Becerra is a citizen of Mexico, but also a legal resident alien[2] of the United States residing in Texas. Her children, Plaintiffs Christopher Emmanuel Becerra and Athenea Elizabeth Becerra, are U.S. citizens and residents of the State of Texas. de Becerra, et. al., Supplemental Mot. to Remand ¶ 2. (Collectively, Athenea, Christopher, and Athenea Elizabeth will be called "Plaintiffs de Becerra.") Plaintiff Oziel R. Arjona, a citizen of Mexico, is a legal resident alien of the United States residing in California. Plaintiffs Norma D. Arjona, Oziel Evan Arjona, and Vanessa Arjona are U.S. citizens and residents of California. At the time of the accident, however, the Arjona family (collectively, "Plaintiffs Arjona") was residing in Texas. *Id.* ¶ 3. Plaintiff Lizbeth Salazar Cantu and her children, Plaintiffs Wendy Maridol Rico Salazar and Salvador Rico Salazar (collectively "Plaintiffs Salazar"), as well as Plaintiff Juan Ezequiel Mendoza Soto ("Soto") are citizens and residents of Mexico. *Id.* ¶ 4.

On May 10, 2000, the decedents of Plaintiffs de Becerra and Plaintiffs Salazar as well as Oziel R. Arjona and Soto were involved in a single vehicle accident on a highway outside Monterrey, Mexico. A Firestone tire on a 1998 Chevrolet Suburban driven by Rosa Maria Mejia Martinez failed, allegedly causing the deaths of Martinez and passengers Jose Manuel Becerra and Salvador Rico Lopez, and injuring passengers Oziel R. Arjona and Soto. de

---

**2.** The U.S. Citizenship and Immigration Service gives the term "resident alien" three different meanings, all of which apply "to non-U.S. citizens currently residing in the United States." The term may refer to a permanent resident, a conditional resident, and a returning resident. A permanent resident is defined as "any person not a citizen of the United States who is residing in the U.S. under legally recognized and lawfully recorded permanent residence as an immigrant." A conditional resident is "any alien granted permanent resident status on a conditional basis (e.g., a spouse of a U.S. citizen; an immigrant investor), who is required to petition for the removal of the set conditions before the second anniversary of the approval of his or her conditional status." Finally, a returning resident is "any lawful permanent resident who has been outside the United States and is returning to the U.S." *See http://uscis.gov/graphics/glossary3.htm.* The meaning of "resident alien" as applied to Athenea Gonzalez de Becerra and Oziel R. Arjona is not specified. However, all three resident alien classifications have a permanent resident element, which is sufficient for the purposes of our analysis.

Becerra, et. al., Supplemental Mot. to Remand ¶ 1. The subject tire was designed and manufactured in the U.S. (in Tennessee or Texas) and/or in Canada, and entered the stream of commerce in Texas. de Becerra, et al. Compl. § VIII.

**Hugo Zacarias Sandoval, et. al. (IP 03–5787–C–B/S)**

Plaintiff Hugo Zacarias Sandoval is a Mexican citizen and a legal permanent resident alien of the United States residing in Texas. Plaintiffs Anna Maria Serrano and Brenda Yanely Zacarias are U.S. citizens and residents of Texas. Sandoval Resp. ¶ 2.2. (Collectively, Hugo, Anna Maria, and Brenda will be known as "Plaintiffs Sandoval.") On July 20, 2003, Hugo Zacarias Sandoval was driving a 1996 Ford Explorer from Monterrey to Nuevo Laredo, Mexico, when the tread of the right rear Firestone tire separated from the tire, causing the vehicle to lose control and rollover. Plaintiffs Sandoval sustained injuries; Plaintiffs Sandoval's decedent, Hugo Zacarias, Jr., also suffered severe injuries from which he ultimately died. *Id.* ¶¶ 1.1–1.2.

**Sofia Lopez de Manez, et al. (IP 03–5790–C–B/S)**

Plaintiffs Sofia Lopez de Manez and her children, Plaintiffs Joseph Samuel Manez–Lopez and Kery Jennifer Manez–Lopez, (collectively "Plaintiffs Manez–Lopez"), are citizens and residents of Mexico. Manez–Lopez Compl. ¶ 2. On December 26, 2002, Plaintiffs Manez–Lopez's decedent, Jose Samuel Manez–Reyes, was riding in a 1998 Ford Explorer on an expressway in Veracruz, Mexico, when the tread on the left-rear Firestone tire separated from the tire. The vehicle rolled over, fatally injuring him. The tire at issue was designed and tested in either Tennessee or Texas, manufactured in Canada, and attached to the subject vehicle in Kentucky. *Id.* ¶¶ 10–11.

For purposes of the following legal analysis, we group the above-named Plaintiffs as follows: (1) U.S. residents, including both U.S. citizens and resident aliens, and (2) foreign residents. Although our research has not uncovered a case explicitly dictating such a grouping, courts in other contexts have allowed U.S. resident aliens access to U.S. courts comparable to that of U.S. citizen-residents and greater than that of foreign residents. *See, e.g.,* 28 U.S.C. § 1332(a) ("For [diversity jurisdiction purposes], an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled"); 46 U.S.C. § 688(b) ("No action may be maintained under [the Jones Act] or under any other maritime law of the United States for maintenance and cure or for damages for the injury or death of a person who was not a citizen or permanent resident alien of the United States at the time of the incident giving rise to the action..."); *In re Silicone Gel Breast Implant Products Liability Litig.,* 1994 WL 578353, *12 (N.D.Ala.1994) (defining the class of "Foreign Claimants" as those class members who were neither citizens nor permanent resident aliens of the United States and whose breast-implants had all been implanted outside the United States). The group of U.S. resident Plaintiffs includes Cisneros, Plaintiffs de Becerra, Plaintiffs Arjona, and Plaintiffs Sandoval. The second group, foreign residents, encompasses Plaintiffs Salazar, Soto, and Plaintiffs Manez–Lopez.

*Legal Analysis*

▮ Under the doctrine of *forum non conveniens,* "a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *Kamel v. Hill–Rom Co., Inc.,* 108 F.3d 799, 802 (7th Cir.1997) (citations omit-

ted). A number of considerations guide our *forum non conveniens* inquiry. First, an adequate alternative forum must be available to hear the case. *Id.* If this threshold criterion is satisfied, then the court must identify various private and public interest factors and balance them to determine whether dismissal is appropriate. *Id.* at 803; *see also ISI Int'l, Inc. v. Borden Ladner Gervais, LLP,* 2001 WL 1382572, at *2 (N.D.Ill. Nov.5, 2001) ("the court must balance the private interests of the litigants and the public interests of the forum to determine the superior forum"). As the defendants in this case, Ford and Firestone "bear [ ] the burden of persuasion as to all elements of the *forum non conveniens* analysis." *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 43–44 (3d Cir. 1988) (*Lacey I*); *see also Pyrenee, Ltd. v. Wocom Commodities, Ltd.,* 984 F.Supp. 1148, 1161 (N.D.Ill.1997) ("The defendant has the burden of demonstrating *forum non conveniens.*").

### Adequate Alternative Forum

■ The first step in any *forum non conveniens* analysis is to determine whether there are adequate alternative forums in which to hear these cases. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Such a determination is a "two-part inquiry: availability and adequacy." *Kamel,* 108 F.3d at 802. A forum is "available" if "all parties are amenable to process and are within the forum's jurisdiction." *Id.* at 803 (citing *Piper,* 454 U.S. at 254 n. 22, 102 S.Ct. 252). An alternative forum is "adequate" when "the parties will not be deprived of all remedies or treated unfairly." *Id.* (citing *Piper,* 454 U.S. at 255, 102 S.Ct. 252).

■ Defendants have stipulated that they will submit to personal jurisdiction in Mexico [3] and that they will not assert any statute of limitations defense based on the time that has elapsed while these cases were pending before this court. Defs.' Memo. p. 1, n. 2. There is no indication that the Mexican courts would not accept such a stipulation. Therefore, Mexico is an available forum. *Gonzalez v. Chrysler Corp.,* 301 F.3d 377, 380 n. 3 (5th Cir.2002) ("It is undisputed that Mexico is an amenable forum because the defendants have agreed to submit to the jurisdiction of the Mexican courts."); *see also Macedo v. Boeing Co.,* 693 F.2d 683, 688 (7th Cir.1982).

Plaintiffs argue, however, that despite its availability, Mexico is an inadequate forum. They contend that certain evidence presumed admissible in the United States would not be admissible in Mexico, and that the Mexican judicial system's lack of resources would result in an undue delay in the resolution of these cases. However, Mexico provides "some potential avenue for redress," which is all that is required of an adequate alternative forum in a *forum non conveniens* analysis. *Kamel,* 108 F.3d at 803 (citing *Ceramic Corp. of Am. v. Inka Maritime Corp.,* 1 F.3d 947, 949 (9th Cir.1993)).

Numerous cases have held Mexico to be an adequate forum for tort litigation involving American-made products, despite differences in Mexican and U.S. substantive and procedural law. *See, e.g., Gonzalez,* 301 F.3d at 379–83 (rejecting plaintiffs' contention that Mexico was an inadequate forum because of its policies to cap damages and to limit the availability of strict liability-even to the point at which the

---

3. We recognize that Mexico is a federal republic, comprised of 31 states and one federal district, each of which has its own laws. *See* http://www.cia.gov/c ia/publications/fact-book/geos/mx.html# Intro. To avoid undue complexity, however, we refer, in general, to "Mexico," "Mexican law," and "Mexican courts."

lawsuit ceases to become economically viable); *Dominguez–Cota v. Cooper Tire & Rubber Co.,* 284 F.Supp.2d 444, 449–50 (N.D.Miss.2003) (finding that "neither discovery limitations nor the lack of a jury trial in a foreign forum renders such a forum inadequate") (citations omitted). In this case, Plaintiffs present no fact or legal argument to distinguish their situation from this precedent. Because Plaintiffs will not be deprived of all remedies or treated unfairly in Mexico, we find it to be an available and an adequate forum for Plaintiffs' claims.

### Balancing the Interests

Having found Mexico to be both an available and an adequate forum, we turn to the task of balancing the private and public interest factors relevant to the choice of forum. Private factors are usually analyzed separately from public factors, and Defendants continue to bear the burden of persuasion as to this element of the *forum non conveniens* analysis. *In re Bridgestone/Firestone, Inc.,* 190 F.Supp.2d 1125, 1134–35 (S.D.Ind.2002) (internal citations omitted). Defendants must provide enough information to enable the court to balance the parties' interests. *Piper,* 454 U.S. at 258, 102 S.Ct. 252. The court must have a basis upon which to "scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are crucial, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Van Cauwenberghe v. Biard,* 486 U.S. 517, 528, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988). In *Kamel,* the Seventh Circuit stated that dismissal is appropriate "when a trial in the chosen forum would result in vexation and oppression to the defendant which would far outweigh the plaintiff's convenience or when the chosen forum would generate administrative and legal entanglements for the trial court." 108 F.3d at 802.

■ At the outset, the parties dispute the degree of deference to which Plaintiffs are entitled with regard to their choice of forum. Before being transferred to the MDL, these cases were filed in either the Southern or the Western District of Texas. In *Piper,* the Supreme Court determined that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public factors clearly point towards trial in the alternative forum." 454 U.S. at 255, 102 S.Ct. 252 (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). However, this presumption applies with less force when the plaintiff is foreign. *Id.*

While it is reasonable to assume that a plaintiff's choice of her home forum is convenient, it is "much less reasonable" to presume convenience when a foreign plaintiff chooses a forum in the United States. *Id.* at 255–56, 102 S.Ct. 252. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice of forum deserves less deference. Thus, a distinction between U.S. resident or citizen plaintiffs and foreign plaintiffs is fully justified. *Id.* at 256, 102 S.Ct. 252.

Plaintiffs argue that the International Covenant on Civil and Political Rights ("the ICCPR"), of which both the United States and Mexico are signatories, accords the foreign resident Plaintiffs' choice of forum "the same presumption of correctness enjoyed by U.S. citizens filing claims in these courts." Pls.' Resp. pp. 11–12. Article 14(1) of the ICCPR provides that "All persons shall be equal before the courts and tribunals [of all signatory countries]." *See Dubai Petroleum v. Kazi,* 12 S.W.3d 71, 82 (Tex.2000); Pls.' Resp. p. 12. In *In re Bridgestone/Firestone,* we held

that "expatriate U.S. nationals and treaty nationals residing in their home countries are entitled to the same deference on their choice of forum as resident U.S. nationals, with the consideration that suing in a United States forum while residing in a foreign country is less likely to be convenient." 190 F.Supp.2d at 1136. We apply that standard again here.

For the U.S. resident Plaintiffs, who currently reside or at the time of filing resided in Texas, trial in the Southern or Western District of Texas is very likely to be convenient. Consequently, the U.S. resident Plaintiffs are entitled to a strong presumption in favor of their choices of forum. With regard to the foreign resident Plaintiffs, we conclude that Texas is less likely to be a convenient forum, and therefore, that this factor weighs in favor of dismissal of these cases on grounds of *forum non conveniens.* Any perceived difference in treatment between foreign and U.S. national plaintiffs is "not because of chauvinism or bias in favor of [United States] residents." *Zermeno v. McDonnell Douglas Corp.,* 246 F.Supp.2d 646, 662 (S.D.Tex.2003) (internal citations omitted). Rather, it is the result of the application of a neutral rule comparing the conveniences of the parties, a comparison which properly considers each party's residence. *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 102 (2nd Cir.2000); *see also Interpane Coatings, Inc. v. Australia and New Zealand Banking Group Ltd.,* 732 F.Supp. 909, 914–15 (N.D.Ill.1990) ("weighting of the scales in favor of the plaintiff is particularly appropriate where the plaintiff is a resident of the forum he is suing in").

### Private Interest Factors

■ Next, we examine the private interest factors impacting the choice of forum. Important considerations concerning the private interests of the litigants include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive [including] questions as to the enforcibility [sic] of a judgment if one is obtained." *In re Bridgestone/Firestone, Inc.,* 190 F.Supp.2d at 1137 (citing *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839).

■ We look first at ease of access to sources of proof, including documents and witness testimony, as they are often considered together. *See, e.g., Roynat v. Richmond Transp. Corp.,* 772 F.Supp. 417, 422 (S.D.Ind.1991). The relevant sources of proof in this case may be divided into three categories, evidence of core liability, case-specific liability, and damages. Evidence of core liability relates predominantly to the design and manufacture of the allegedly defective products and to the timing of Defendants' awareness of the problems. The MDL is now in its final stages, and the discovery on these core liability issues was completed in early 2002. Defendants have offered to make available in electronic form in either forum any of this evidence produced through discovery coordinated by the MDL. Defs.' Memo. at 11; *see In re Silicone Gel Breast Implants Prod. Liab. Litig.,* 887 F.Supp. 1469, 1476 (N.D.Ala.1995) ("virtually all of the discovery plaintiffs might need from defendants-in the form of document production and depositions (video and audio)-has already been obtained, and is available at minimal cost for presentation in other courts..."). In addition, Defendants have agreed to make any of their employees available for trial in either forum. Defs.' Reply Br. p. 9.

Plaintiffs, however, assert that Defendants' seemingly generous offers are il-

lusory. They argue that documents produced through the MDL may not be admissible in a Mexican proceeding because they are neither original nor notarized. Pereznieto Aff. ¶ 13. In an attempt to address this potential problem, Defendants have offered to stipulate to the admission into evidence of the document copies. Defs.' Reply p. 10. Plaintiffs also worry that *former* employees of Defendants would be outside of a Mexican court's power of compulsory process and outside of Defendants' control, and therefore, unavailable for trial. As noted above, however, MDL core discovery has closed, and Plaintiffs have not indicated what relevant information, if any, not contained in that discovery would be available uniquely from an unavailable former employee.

To challenge Plaintiffs' claims that the vehicles and/or tires were defective and the proximate cause of Plaintiffs' injuries, Defendants will seek to introduce case-specific evidence of lack of causation, contributory negligence, and third-party negligence. This evidence may include testimony of witnesses to the accident, testimony and reports of accident investigators and emergency medical personnel, and records of vehicle maintenance. The accident-related evidence for all of the cases is located in Mexico, the site of all of the accidents. In addition, based on the facts before us, we think it likely that Plaintiffs' vehicles were serviced and maintained near Plaintiffs' places of residence-Texas for the U.S. resident Plaintiffs and Mexico for the foreign resident Plaintiffs.

Defendants assert that this case-specific evidence located in Mexico may not be available for trial in the U.S. because these sources of proof are outside of a federal court's power of compulsory process and not under either party's control. *See Urena Taylor v. Daimler Chrysler Corp.*, 196 F.Supp.2d 428, 433 (E.D.Tex.2001) (citing *Torreblanca de Aguilar v. Boeing Co.*, 806 F.Supp. 139, 144 (E.D.Tex.1992), *aff'd De Aguilar v. Boeing Co.*, 11 F.3d 55 (5th Cir.1993), (finding that it would be "difficult and expensive" to produce Mexican medical and law enforcement personnel in Texas for trial)). However, Defendants make no mention of letters rogatory, which may be used to secure video depositions of Mexican witnesses unwilling to provide testimony in the U.S. *In re Bridgestone/Firestone*, 190 F.Supp.2d at 1140 (citing *DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 66–67 (2d Cir.2000)) (error to fail to consider ability to obtain witness testimony through letter rogatory). Defendants also contend that they would be unable to implead potential third-party defendants located in Mexico in an action in the U.S. because the Mexican third-party defendants would not be subject to the jurisdiction of the U.S. courts. The inability to implead third-party defendants would generally weigh in favor of dismissal, although it is not a conclusive factor. *See, e.g., Dominguez–Cota*, 284 F.Supp.2d at 451; *In re Bridgestone/Firestone*, 190 F.Supp.2d at 1154. We note, however, that the fact-specific discovery deadlines for Plaintiff Cisneros and Plaintiffs de Becerra, et al., passed on April 29, 2003, and Defendants have failed to identify any relevant document, witness or third-party defendant that they would be unable to bring to Texas for trial.[4]

Evidence of damages, like evidence of vehicle maintenance, tends to be found where Plaintiffs reside. Such evidence may consist of medical, employment, and

---

4. The fact-specific discovery deadlines for U.S. resident Plaintiffs Sandoval and foreign resident Plaintiffs Manez–Lopez are set for later this spring. Therefore, we do not draw any inferences from the parties' failure to identify any specific document, witness or third-party defendant in Mexico that would be unavailable for trial in the U.S.

tax records as well as evidence related to Plaintiffs' pain and suffering, loss of consortium, and the like, all of which Plaintiffs would have in their possession. Thus, evidence of damages in the cases involving U.S. residents will probably be located in Texas, whereas in the foreign resident Plaintiffs' cases, evidence of damages will likely be located in Mexico.

In addition to the availability of certain documents and witnesses, we must consider the expense and inconvenience of translation. Regardless of where the cases are tried, some evidence will be presented in translation. For example, English translations of eyewitness and medical testimony would be necessary for proceedings in Texas. Mexican courts, in turn, would require Spanish translations of documents and testimony concerning the alleged defect, which Plaintiffs argue are voluminous. (Defendants do not address this issue.) In order to determine the effect of the need for translation on the *forum non conveniens* analysis, we weigh the amount of evidence that must be translated if the trial remains in the U.S. forum against the amount of evidence to be translated if the trial is held in a foreign forum. We find that the necessity of translation weighs in favor of a U.S. forum because, for each case, the amount of accident-specific and damages-related evidence will be less than the amount of evidence needed to prove defect and damages. *In re Bridgestone/Firestone*, 190 F.Supp.2d at 1142.

Another private interest factor, namely, the relevance and necessity of the fact finder having a view of the accident scene, weighs in favor of dismissal in all cases subject to the motion under consideration. Although of less importance because we assume photographs of the crash sites would be available to a Texas court, a Mexican court "would be aided by familiarity with [the local] topography." *Piper*, 454 U.S. at 242, 102 S.Ct. 252. Finally, we

must assess the practical problems presented by trial and consider in which forum trial could proceed most easily, expeditiously, and inexpensively. Critical to this analysis is the enforceability of the judgment. In order to ensure that Plaintiffs may be able to enforce any judgment of a Mexican court against Defendants, "Defendants have agreed to satisfy any judgment entered by the Mexican courts." Because any judgment rendered in a U.S. forum also could be easily enforced, Defendants' concession equalizes the two forum choices with respect to this issue.

Having discussed the various private interest factors, we now summarize them with respect to the U.S. resident and the foreign resident cases:

In the cases involving U.S. resident Plaintiffs, the question of which forum affords the greater access to proof is a fairly close one. Certain private interest factors are neutral: Defendants have pledged to make available in either forum documents discovered through the MDL as well as any of their employees that Plaintiffs wish to call as witnesses. They have also agreed to satisfy any final judgment rendered by an American or Mexican court. Certain other private interest factors favor trial in the U.S.: Evidence related to vehicle service, damages, and possibly Plaintiffs' medical treatment would be found in Texas and in English. In addition, the large number of documents and depositions related to the alleged product defects would not have to be translated into Spanish. Yet other private interest factors, however, favor trial in Mexico: View of an accident scene is possible only by a local, Mexican court. Evidence pertaining to the accident, its investigation, and perhaps Plaintiffs' emergency medical treatment would likely be in Spanish and located in Mexico, outside a U.S. federal court's power of compulsory process. Although one may generally infer that these sources of

proof may not be conveniently accessed in Texas, we note that this factor is less persuasive in the cases of Plaintiff Cisneros, Plaintiffs de Becerra, and Plaintiffs Arjona. Fact-specific discovery in these cases closed on April 29, 2003; however, Defendants, who bear the burden of persuasion on all elements of *forum non conveniens*, failed to identify any necessary document, witness, or third-party defendant located in Mexico that would be unavailable for trial in Texas. Considering all of the private interest factors together, we conclude that they do not "clearly point towards" trial in Mexico for the U.S. resident Plaintiffs; thus, Plaintiffs' choice of forum stands.

In the foreign resident Plaintiffs' cases, however, we conclude that access to sources of proof would be greater in Mexican courts. As stated above, Defendants have stipulated that they will make available in either forum documents and deposition testimony discovered through the MDL as well as any employees whom Plaintiffs wish to call as fact witnesses. Defendants have also agreed not to challenge the admission into evidence of copies of these documents and to satisfy any final judgment rendered by a Mexican court. Any third-party defendants and all of the documentary evidence and witnesses related to the accident, the investigation of the accident by law enforcement, the emergency medical treatment received by Plaintiffs, the service of Plaintiffs' vehicles, and the measurement of Plaintiffs' damages would be found in Mexico, outside compulsory process in the United States. A Mexican court would also be able to view the accident scene. Although the issue of translation weighs in favor of retaining jurisdiction in the U.S., following the weight of authority, we find that the bur-

den of translation does not outweigh the benefit of easier access to proof in the Mexican courts. *See, e.g., Zermeno,* 246 F.Supp.2d at 660 (collecting examples of cases dismissed on grounds of *forum non conveniens* even though the bulk of evidence related to the design and manufacture of the allegedly defective product was written in English and located in the U.S.). Therefore, we find that the private interest factors "clearly point towards" dismissal of the foreign resident cases for *forum non conveniens.*

### Public Interest Factors

■ Next we consider the public interest factors. The public interest factors focus on the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *In re Bridgestone/Firestone, Inc.,* 190 F.Supp.2d at 1145 (citing *Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. 252).

First, with regard to court congestion, the burden of trial does not fall on our court, a fact which makes us slightly less comfortable with determining where these cases can best be accommodated. While federal courts in Texas have crowded dockets,[5] "Defendant's description of the [Mexican] alternative is not sufficiently detailed to permit the court to make an informed comparison or balance." *Prevision Integral de Servicios Funerarios, S.A. v. Kraft,* 94 F.Supp.2d 771, 781 (W.D.Tex.2000). Thus, we find that this

---

**5.** The Southern District of Texas, the only district for which information was readily and publicly available, has a greater number of weighted filings per judgeship than the national average. In addition, it completes slightly more than twice the number of trials

factor does not weigh heavily in favor of either retention or dismissal of the cases.

Next, we examine the respective local interests of the forums under consideration. In the U.S. resident cases, Texas has an interest in protecting the health and safety of its residents, but this interest must be weighed against Mexico's interest in regulating the use of allegedly defective products within its borders. In the foreign resident cases, Mexico has an interest in protecting the health and safety of its residents as well as an interest in regulating potentially dangerous products used within its borders. Plaintiffs also argue that the United States as a whole has an interest "in regulating the conduct of companies that operate their global business from within these borders," Pls.' Br. p. 29.

Plaintiffs recite the maxim that a defendant's home forum, in this case a U.S. federal court, has a strong interest in providing a forum for redress of injuries caused by its citizens. This maxim holds true in the U.S. resident cases because it supports the right of U.S. citizens and permanent residents to access U.S. courts in order to seek redress for their grievances. *See Reid–Walen v. Hansen*, 933 F.2d 1390, 1394–95 (8th Cir.1991) (reversing the district court's dismissal for *forum non conveniens* where both the plaintiff and defendants were U.S. citizens).[6] However, in the foreign resident cases, the Seventh Circuit has suggested that the "strong interest" of the defendant's home forum is tempered where, as here, Plaintiffs are foreign citizens and Defendants are American corporations with extensive

foreign business dealings. *In re Bridgestone/Firestone, Inc.*, 190 F.Supp.2d at 1146 (citing *Kamel*, 108 F.3d at 804). Therefore, this public interest factor-the local interest in having localized controversies decided at home-weighs in favor of retention of the U.S. resident cases and dismissal of the foreign resident cases.

Related to the idea that Mexico and Texas both have an interest in protecting the lives and health of their respective residents is the idea that it would not be unduly burdensome for other residents of these related forums to be pressed into jury service. Thus, allocating the burden of jury duty also supports retention of the U.S. resident cases and dismissal of the foreign resident cases.

The choice-of-law analysis required to balance the remaining public interest factors, "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action" and "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law," is complicated and ultimately unnecessary to the resolution of this motion. Many courts have found that Mexican law applies to accidents occurring in Mexico and involving Mexican citizens/residents. *See, e.g., Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 670 (5th Cir.2003); *Zermeno*, 246 F.Supp.2d at 663 (collecting cases). However, even if we were to assume, as Plaintiffs suggest, that the law of a U.S. state applies to the foreign resident cases, any difficulty a Mexican court might have in applying U.S. state law, when considered

---

per judgeship than the average federal court. We note that these increases appear to be due to a criminal docket 2.5 times larger than the national average. The problem of overcrowded dockets of all the federal district courts located on the southern border of the U.S., because of the heavy burden of drug and immigration cases, is widely known and of

urgent proportions. *See* Southern District of Texas Caseload Statistics, available at http://www.txs.uscourts.gov/statistics/statist.htm.

**6.** The Eighth Circuit suggested that it would treat U.S. permanent residents like U.S. citizens. *See Reid–Walen*, 933 F.2d at 1395 n. 6.

in light of the other private and public interest factors, does not clearly point toward retention of the foreign resident cases.

Similarly, with regard to the U.S. resident cases, even if we were to assume *arguendo*, as Defendants contend, that Mexican law governs the resolution of Plaintiffs' claims of liability and compensatory damages, the balance of public interest factors does not compel the dismissal of these cases on the ground of *forum non conveniens*. Defendants do not assert that Mexican law would apply to issues of punitive or exemplary damages. *See* Defs.' Mot. to Determine and Apply the Law of Mexico at p. 1, n. 1. In addition, when the presumption in favor of a U.S. resident's choice of her home forum and the private interest factors weigh heavily in favor of retaining jurisdiction of these cases, we have no doubt that the federal courts in Texas will be up to the task of applying the law of Mexico, if and as necessary. *See In re Bridgestone/Firestone,* 190 F.Supp.2d at 1148 (citing *Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339, 345 (8th Cir.1983) ("[f]ederal courts are quite capable of applying foreign law when required to do so...") and *Manu Int'l, S.A. v. Avon Products, Inc.,* 641 F.2d 62, 68 (2d Cir.1981)).

### Conclusion

For the reasons explicated above, we find that: (1) for the purpose of deciding this motion, the Plaintiffs in these Mexican accident cases are best divided into two groups based on their residency, U.S. and foreign; (2) the U.S. resident Plaintiffs's cases should not be dismissed on grounds of *forum non conveniens* because the presumption of convenience accorded a plaintiff's choice of her home forum as well as the balance of private and public interest factors clearly points toward retention of these cases in the federal courts of Texas; and (3) the foreign resident Plaintiffs'

cases, however, should be dismissed on grounds of *forum non conveniens* because a plaintiff's choice of forum different from her home forum is less likely to be convenient, a conclusion supported by a weighing of private and public interest factors that clearly points toward dismissal of these cases to Mexico. Accordingly, Defendants Motion to Amend the Motion to Dismiss Mexican Accident Cases on *Forum Non Conveniens* Grounds is *GRANTED,* and Defendants Motion to Dismiss the Mexican Accident Cases on *Forum Non Conveniens* Grounds is *GRANTED* with respect to the foreign resident Plaintiffs (Plaintiffs Salazar, Soto, and Plaintiffs Manez–Lopez) and *DENIED* with respect to the U.S. resident Plaintiffs (Cisneros, Plaintiffs de Becerra, Plaintiffs Arjona, and Plaintiffs Sandoval). As a result of this ruling, the case of Sofia Lopez de Manez, et al. (IP 03–5790–C–B/S) is *DISMISSED.*