**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2009

Charles R. Fulbruge III
Clerk

No. 09-50109

In re: FORD MOTOR CO., a Delaware Corporation;
BRIDGESTONE/FIRESTONE NORTH AMERICAN TIRE LLC,
the Successor to Bridgestone/Firestone, Inc.,

Petitioners.

Petition for Writ of Mandamus to
the United States District Court
for the Western District of Texas
No. 2:03-CV-100

ON PETITION FOR REHEARING EN BANC

(Opinion 580 F.3d 308 (Aug. 21, 2009))

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

PER CURIAM:

Treating the petition for rehearing en banc as a petition for panel rehearing, the petition for panel rehearing is DENIED. No member of the panel or judge in regular active service having requested that the court be polled on rehearing en banc (FED. R. APP. P. 35 and 5TH CIR. R. 35), the petition for rehearing en banc is DENIED.

The following opinion is substituted for the original opinion for the purpose of correcting minor factual errors and providing additional explanation.  No further request for rehearing or rehearing en banc will be permitted.

\* \* \* \* \* \* \* \* \* \*

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ford Motor Company ("Ford") and Bridgestone/Firestone North American Tire LLC ("Firestone")[1] requested that the district court reconsider a pretrial *forum non conveniens* ("FNC") motion that had been denied by a multidistrict litigation ("MDL") court.  The district court declined the request, so petitioners seek a writ of mandamus. We grant the writ.

## I.

Plaintiffs are several Mexican citizens who were injured in Mexico in vehicle accidents involving Ford sport utility vehicles and Firestone tires.  They sued Petitioners in Val Verde County, Texas, state court, and petitioners removed to federal court in the Western District of Texas (sometimes referred to as the "Western District").  The case was transferred, under 28 U.S.C. § 1407, to the MDL court in the Southern District of Indiana, which had been established to deal with the more than 700 similar cases against Ford and Firestone.[2]  *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.,* 305 F. Supp. 2d 927, 929 (S.D. Ind. 2004).  At about the same time that plaintiffs filed this suit, another

---

[1] We refer to Ford and Firestone collectively as "petitioners."

[2] Unlike the instant case, the vast majority of these MDL cases involved plaintiffs domiciled in the United States.

case, *Manez*, involving similar circumstances, was also transferred to the MDL court.

Before considering the plaintiff's case, the MDL court examined the merits of a FNC motion in *Manez*. Petitioners (who were also the defendants in *Manez*) filed the FNC motion, claiming that Mexico was an available––and more appropriate––forum. The defendants "stipulated that they [would] submit to personal jurisdiction in Mexico." *Id.* at 932. The court stated, relying on Fifth Circuit precedent, that "[n]umerous cases have held Mexico to be an adequate forum for tort litigation involving American-made products, despite differences in Mexican and U.S. substantive and procedural law." *Id.* (citing *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379-83 (5th Cir. 2002)). The MDL court granted the FNC motion in *Manez*. *Id.* at 939.

The *Manez* plaintiffs appealed to the Seventh Circuit Court of Appeals, as is proper under MDL procedure. *See In re Bridgestone/Firestone, Inc.*, 420 F.3d 702 (7th Cir. 2005). On appeal, the court noted that the district court's FNC decision was "quite reasonable" and said that "this case looks like an easy candidate for a straightforward affirmance." *Id.* at 704-05. The court then noted, however, that there was a "wrinkle" that prevented the easy affirmance: two *ex parte* Mexican court decisions that stated the case could not be tried in Mexican courts. *Id.* at 705. The court noted that it had "substantial misgivings about the plaintiffs' actions" in submitting the orders but held that it did "not have an adequate record to assess whether the plaintiffs' actions were taken in good faith." *Id.* at 706. It remanded for the MDL district court "thoroughly [to] explore the circumstances" surrounding the Mexican decisions. *Id.*

On remand, the district court "conducted an evidentiary hearing to thoroughly explore the circumstances surrounding the [Mexican] courts' decisions." *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 470 F. Supp. 2d 917, 919 (S.D. Ind. 2006). The court concluded that in seeking the Mexican dismissal

order, "the attorneys for Plaintiffs acted with the clear purpose of having the case dismissed[] and, in seeking that result, manipulated the process to insure that the dismissal would be based on a particular reason that was calculated to improve the chances of the dismissal being sustained on appeal." *Id.* at 920. Specifically, it noted e-mails between attorneys discussing how one Mexican judge "confirmed that she will throw out the suit according to what we planned." *Id.* at 925. The MDL court dismissed the case on FNC grounds, and the decision was not appealed. The MDL court later sanctioned the *Manez* plaintiffs' expert witness, Dr. Leonel Pereznieto, noting that he was "the apparent mastermind behind these frauds on the U.S. and Mexican courts." *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 470 F. Supp. 2d 931, 933 (S.D. Ind. 2006).[3]

After that dismissal, the MDL court asked all parties to show cause why their cases should not be dismissed. Plaintiffs did not initially respond, but another plaintiff did submit a reply. Petitioners responded to that reply and specifically asked that plaintiffs' case be dismissed.

Plaintiffs then filed a response, insisting that Mexico was not an available forum. Filed with the response were several dismissal orders, obtained *ex parte* from Mexican courts, that allegedly claimed that foreign defendants cannot be sued in Mexico for tort cases, even if they submit to jurisdiction there.[4]

The MDL court agreed with plaintiffs that Mexico is not an available forum; it denied petitioners' motion to dismiss. The court then ordered a conditional return of the case to the Western District.

Petitioners filed a motion for reconsideration, an alternative motion to

---

[3] The Seventh Circuit overturned the sanctions decision on the ground that Pereznieto had not received "constitutionally adequate notice and an opportunity to be heard in the proceeding that led to the $100,000 fine." *Manez v. Bridgestone/Firestone N. Am. Tire, LLC*, 533 F.3d 578, 593-94 (7th Cir. 2008). The matter is currently pending in the MDL court on remand.

[4] Petitioners have agreed to submit themselves to the jurisdiction of Mexican courts.

certify the issue for interlocutory appeal to the Seventh Circuit, and an objection to the conditional remand order. Plaintiffs opposed all the motions; the MDL court did not rule on any of them before the MDL panel returned the case to the Western District. Six weeks after that occurred, the MDL court dismissed all of the motions as moot.

After the case had been returned to the Western District, Petitioners again filed a motion for reconsideration of the MDL court's FNC decision. They submitted new evidence regarding the *ex parte* dismissal orders, allegedly showing that they had been fraudulently obtained. Judge Hudspeth of the Western District denied the motion, opining that "[w]hen a civil action has been through the MDL process and has been remanded . . . the pretrial rulings made by the transferee court should be reconsidered, if at all, under only the most extraordinary circumstances. To do so would go a long way toward defeating the entire purposes of the MDL process." (citing *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 n.5 (7th Cir. 1996); *In re Food Line, Inc.*, 73 F.3d 528, 531-32 (4th Cir. 1996)). Judge Hudspeth expressed his view that such extraordinary circumstances are not present in this case and that he believed that the petitioners did not actually want to have their case tried in Mexico but only wanted to delay the trial. Also, he denied an interlocutory appeal to this court because, in his opinion, this was a delay tactic. Petitioners ask us to grant mandamus on the FNC issue.

## II.

The issue––whether we can grant mandamus on a district court's refusal to reconsider a pretrial MDL decision––is one of first impression in this circuit. We examine the question in two parts. First, we see whether the district court improperly denied the motion for reconsideration. If we decide that the district court did err, we next look to see whether we can properly grant mandamus in the procedural posture of Judge Hudspeth's denial of reconsideration.

A.

We begin by addressing how MDL transferor courts review the pretrial determinations of transferee MDL courts.[5] We have not established a standard for review of this question, though we note that authorities are unanimous that some deference must be given to the transferee court's decisions.

> [I]t would be improper to permit a transferor judge to overturn orders of a transferee judge even though error in the latter might result in reversal of the final judgment of the transferor court. If transferor judges were permitted to upset rulings of transferee judges, the result would be an undermining of the purpose and usefulness of transfer under [28 U.S.C. §] 1407 for coordinated or consolidated pretrial proceedings because those proceedings would then lack the finality (at the trial court level) requisite to the convenience of witnesses and parties and to efficient conduct of actions.[6]

That view is nothing short of a bright-line rule that a transferor court cannot overrule a transferee court. Several courts have cited this maxim.[7]

Other commentators and courts, however, have rejected a bright-line approach and instead have advocated only substantial deference to the transferee court. "The general rules are not surprising: deference to the decisions reached by the prior judge and jurisdiction or authority to modify those rulings. This is particularly true for rulings which the transferee court could have itself modified." MULTIDISTRICT LITIGATION MANUAL § 10:17. "It would vitiate much of the purpose of consolidating litigation if, after remand, parties could simply re-visit the transferee court's pre-trial rulings, and force the common defendant to deal

---

[5] A transferor court refers to the court in which the suit was begun (here, the Western District of Texas); the transferee court refers to the court to which the case was transferred for MDL pretrial rulings (the Southern District of Indiana).

[6] Stanley A. Weigle, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts*, 78 F.R.D. 575, 577 (1978).

[7] *See, e.g., In re Food Lion, Inc. Fair Labor Standards Act Effective Scheduling Litig.*, 73 F.3d 528, 531 (4th Cir. 1996).

piecemeal with once-collective matters." *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 n.5 (7th Cir. 1996).

Instead of promoting general deference, others have stated that the "law of the case" should apply where a transferor court is deciding whether to overturn the decision of a transferee court. "Although the transferor judge has the power to vacate or modify rulings made by the transferee judge, subject to comity and 'law of the case' considerations, doing so in the absence of a significant change of circumstances would frustrate the purposes of centralized pretrial proceedings." MANUAL FOR COMPLEX LITIGATION § 20.133. Some courts have agreed with this viewpoint.[8]

The better view is the latter––that transferor courts should use the law of the case doctrine to determine whether to revisit a transferee court's decision. Moreover, a bright-line rule cannot be reconciled with our precedent in similar situations: "The revisitation by the court of [an] earlier order . . . was not error because . . . a court may correct its own errors. The fact that [the judge] was not correcting his own error, but that of another judge who initially had been in charge of the case, is no moment." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (citation omitted).

We have also used the law of the case doctrine when examining a situation "in which one judge has rendered an order or judgment and the case is then transferred to another judge." *United States v. O'Keffe*, 128 F.3d 885, 892 (citing *Albshire v. Seacost Prods.*, 668 F.2d 832, 838 (5th Cir. 1982)). "Under the law of the case doctrine and general principles of comity, a successor judge has the same discretion to reconsider an order as would the first judge, but should not

---

[8] *See, e.g., In re Multi Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 678 (D.C. Cir. 1981) ("The doctrine of the law of the case has its application in multidistrict litigation as well as in traditional litigation." (citing *ABC Great States, Inc. v. Globe Ticket Co.*, 316 F. Supp. 449 (E.D. Pa. 1970)).

overrule the earlier judge's order or judgment merely because the later judge might have decided matters differently." *Id.* (citing *Loumar, Inc. v. Smith*, 698 F.2d 759, 762-63 (5th Cir. 1983)).

In reviewing transferee court decisions under the law of the case doctrine, transferor courts should rarely reverse, because any widespread overturning of transferee court decisions would frustrate the principle aims of the MDL process and lessen the system's effectiveness. The law of the case doctrine "requires attention to the special authority granted to the multidistrict transferee judge" and ensures that transferor courts respect the transferee court's decisions. *Multi-Piece Rim*, 653 F.3d at 678. That doctrine also has the virtue of allowing transferor courts to correct serious errors of the transferee court.

## B.

The law of the case doctrine requires that courts not revisit the determinations of an earlier court unless "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work . . . manifest injustice." *Propes v. Quarterman*, 573 F.3d 225, 228 (5th Cir. 2009) (citing *Goodwin v. Johnson*, 224 F.3d 450, 457-58 (5th Cir. 2000)) (ellipses in original). Since the MDL court's ruling, no new controlling authority has overruled the decision. Though petitioners have presented new evidence that calls into question the plaintiffs' *ex parte* orders from Mexico,[9] we need not decide whether that evidence is enough to invoke the law of the case

---

[9] Plaintiffs claim that this evidence could not be considered by the transferor court, so we therefore cannot consider it. This is incorrect. Under the law of the case doctrine, one of the explicit reasons for overturning an earlier decision is the submission of new evidence; this would be impossible under plaintiffs' theory. If new evidence has been acquired since the transferee court's decision, it may be submitted to the transferor court.

doctrine.[10]

Instead, we conclude that the transferee court's FNC decision is so clearly erroneous that it would work manifest injustice in this case. Because the transferor court should have recognized its serious error, its decision not to vacate its decision regarding FNC was also clearly erroneous.

We have held in numerous cases that Mexico is an available forum for tort suits against a defendant that is willing to submit to jurisdiction there. In *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003), we examined a case in which the defendant had stipulated to the jurisdiction of Mexican courts.[11] The district court found that the "stipulation . . . made Mexico an available forum." *Id.* We agreed with that conclusion, noting that there was no dispute regarding whether Mexico was available as long as the defendant submitted to jurisdiction. *Id.*

Again, in *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 n.3 (5th Cir. 2002), we held that "[i]t is undisputed that Mexico is an amenable forum because the defendants have agreed to submit to the jurisdiction of the Mexican courts." Both *Vasquez* and *Gonzales* involved torts against foreign defendants—the same kind of suit that the instant plaintiffs allege is not available in Mexico even where a defendant submits to jurisdiction.

Finally, in *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 804 (5th Cir. 2007), we agreed with the district court's finding that "Mexico is an adequate and available forum." Other district courts have also concluded that Mexi-

---

[10] Nothing in this opinion should prevent the transferor court, on any later reconsideration of the MDL decision, from examining petitioners' evidence that rather convincingly shows the *ex parte* orders may be fraudulent.

[11] *Vasquez* is importantly similar to the instant case in that it involved personal injuries resulting from a vehicle crash involving Firestone tires in Mexico.

co is an available forum in such cases.[12] Similarly, a "defendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of [FNC] analysis." *Veba-Chemie A.G. v. M/V GETAFIX*, 711 F.2d 1243, 1245 & n.3 (5th Cir. 1983).[13]

These many decisions create a nearly airtight presumption that Mexico is an available forum. We have held that if a defendant submits to jurisdiction, there is a presumption of forum availability; petitioners have done so here. We have held in tort cases (even one case involving nearly identical facts) that Mexico is an available forum for tort suits against foreign defendants. "Our rule of orderliness 'forbids one of our panels from overruling a prior panel.'"[14] Thus, unless this court en banc or the Supreme Court decides otherwise, petitioners' willingness to submit to jurisdiction in Mexico makes it an available forum for FNC purposes, based on the binding precedent of this court.

District courts do not have to start from scratch each time they consider a forum's availability; if we have found a forum to be available in earlier cases, district courts can rely on our precedent in similar cases to hold that it is still available. Unless plaintiffs can show evidence distinguishing this case from our precedent, an order from a Mexican court dismissing *this exact case* for lack of jurisdiction, or reliable evidence of some subsequent change in Mexican law that calls our earlier determinations into serious question, plaintiffs cannot prevail in their FNC defense. Because no such evidence was presented, the transferee

---

[12] *See de Aguilar v. Boeing Co.*, 806 F. Supp. 139 (E.D. Tex. 1992); *see also Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 658-59 (S.D. Tex. 2003).

[13] Even the plaintiffs seem to concede that *Veba-Chemie* is harmful to their position. In a supplemental letter brief, plaintiffs interpret *Veba-Chemie* "to mean that where it is unknown or cannot be easily determined whether a foreign jurisdiction is or is not an available forum, it can be presumed that it would be available when there is a consent to jurisdiction."

[14] *Pretus v. Diamond Offshore Drilling, Inc.*, 571 F.3d 478, 487 (5th Cir. 2009) (Smith, J., dissenting) (quoting *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999)).

and transferor courts clearly erred in refusing to grant the FNC dismissal.[15]

Along with failing to consider our earlier binding opinions, the MDL court erred when it relied solely on the plaintiffs' *ex parte* orders from Mexican courts without any expert testimony. At oral argument, plaintiffs' counsel conceded that they had submitted only two experts to the MDL court: Leonel Pereznieto and Mexican Judge Garcia Estrada. Counsel also admitted that the MDL court struck both Pereznieto's and Estrada's testimony. Thus, plaintiffs had no experts on whom to rely. Instead, they submitted only *ex parte* orders allegedly showing Mexico is not an available forum. The MDL court relied on those orders in denying petitioners' FNC motion.

The MDL court erred twice in using the *ex parte* orders to reach its decision. First, the court should have required expert testimony to analyze the *ex parte* orders and other important materials, such as Mexican code provisions and Mexican Supreme Court or appellate decisions.[16] Second, relying solely on these *ex parte* orders was error. We recognize that in Mexican courts, jurisdictional

---

[15] Though the MDL court was not sitting in the Fifth Circuit, plaintiffs' cases all originated in the district courts of this circuit. Merely moving this case from the Western District of Texas to the Southern District of Indiana does not allow plaintiffs to circumvent our earlier binding precedent that Mexico is an available forum. Such a perverse result would allow a case to proceed improperly just because it happened to be before an MDL panel.

The result that occurred here undermines the goals of § 1407(a), which requires MDL cases to be transferred to promote "the *just* and efficient conduct" of proceedings. 28 U.S.C. § 1407(a) (emphasis added). It is not "just" to require petitioners to defend their suit in the Western District merely because plaintiffs were able to transfer to an MDL panel in another circuit. Although there is disagreement among courts on this point, the better view is that, because forum-availability law is "geographically non-uniform, a transferee court should use the rule of the transferor forum in order to implement the central conclusion of [*Van Dusen v. Barrack*, 376 U.S. 612 (1964)] and [*Ferens v. John Deere Co.*, 494 U.S. 516 (1990)]: that a transfer . . . accomplishes "but a change of courtrooms." *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1127 (7th Cir. 1993). For there to be "but a change of courtrooms" here, the MDL court should have applied *Vasquez* and *Gonzales* to find that Mexico is an available forum.

[16] Even with this expert testimony, the experts would have to present strong evidence that their case is distinguishable from our earlier precedent in order to overcome the presumption that Mexico is an available forum.

decisions *can* be given *ex parte* without necessarily violating any rules. Plaintiffs, however, have not submitted any evidence to show that these orders *must* be issued without the opposing counsel's being present. Especially in a case such as this––where other similarly situated plaintiffs have acted fraudulently––the MDL court should have asked for orders that were issued in courts in which both parties were present, to ensure there was no fraud. By not having expert testimony, and by relying on *ex parte* orders obtained without the presence of opposing counsel, the MDL court again erred.

Finally, but importantly, we note that petitioners were and are willing to submit to a return jurisdiction clause. As we noted for the plaintiff in *Vasquez*, "[t]here is no guarantee that [Mexico] will remain an available forum or that defendants will submit to its jurisdiction. A return jurisdiction clause remedies this concern by permitting parties to return to the dismissing court should the lawsuit become impossible in the foreign forum." *Vasquez*, 325 F.3d at 675. Petitioners stated that they will accept a return jurisdiction clause, and this weighs heavily in favor of finding that the MDL court erred.

The evidence put before the MDL court was rather equivocal on whether Mexico was an available forum; both sides submitted experts,[17] code provisions, court decisions, and orders showing Mexico to be either an available or unavailable forum. With such uncertainty, a return-jurisdiction clause must weigh heavily in favor of granting the FNC motion. That clause will allow both sides–– rather than just plaintiffs––to go before a judge in Mexico and find out whether *this specific suit* can be tried there. If Mexico will not hear the case, plaintiffs can re-file in Texas and proceed to trial. In the face of evidence and caselaw showing Mexico to be an available forum, it was clear error for the MDL court to reject this option.

---

[17] Plaintiffs' experts' testimony was struck from the record.

For all of these reasons, under the law of the case doctrine, the transferor court should have reconsidered the MDL court's FNC decision for manifest injustice. In light of the binding caselaw, the lack of expert evidence, and the willingness of the petitioners to submit to a return jurisdiction clause, Mexico was the proper forum. Having found that there was manifest injustice and that the transferor court clearly erred in not reconsidering the MDL court's FNC decision, we now must see whether this case meets our criteria for granting mandamus relief.

## III.

Mandamus is an appropriate remedy for "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004) (citations and internal quotation marks omitted); *see In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc), *cert. denied*, 129 S. Ct. 1336 (2009). Plainly, a transferor court's refusal to reexamine a transferee court's FNC decision can be one of the "exceptional circumstances," so long as the refusal meets our stringent criteria for granting mandamus. "[C]ourts reviewing petitions for mandamus 'must be careful lest they suffer themselves to be misled by labels such as 'abuse of discretion' and 'want of power' into interlocutory review of nonappealable orders on the mere ground that they may be erroneous.'" *Volkswagen*, 545 F.3d at 309 (citing *Will v. United States*, 389 U.S. 90, 98 n.6 (1967)).

In *Volkswagen*, we noted that an abuse of discretion occurs where a court "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Id.* at 310 (citation omitted). "On mandamus review, we review for these types of errors, but we only will grant mandamus relief when such errors produce a patently erroneous result." *Id.* Showing that there was a clear abuse of discretion, however, is not enough:

> The Supreme Court has established three requirements that must be met before a writ may issue: (1) the party seeking issuance of the writ must have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process; (2) the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable; and (3) even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*Id.* at 311. (citation, internal quotation marks and brackets omitted). "These hurdles, however demanding, are not insuperable." *Id.* (citation omitted).

For the reasons we have explained, there was a clear abuse of discretion, because the transferor court refused to alter a transferee court's decision that relied on an erroneous conclusion of law. Petitioners submitted to jurisdiction in Mexico, and our caselaw plainly holds that Mexico is an available forum. It was patently erroneous for the MDL court to ignore this binding precedent and equally erroneous for the transferor court to accept that decision.

We additionally find comfort in granting mandamus in light of the fact that this is an extraordinary case. Snippets of the record that counsel that result include, in no particular order of significance, the fact that plaintiffs' expert on Mexican law was the same person who had been employed by the *Manez* plaintiffs and who had been sanctioned by the MDL court for bad faith and fraudulent conduct. Moreover, to show that Mexico was unavailable, plaintiffs submitted *ex parte* dismissal orders that were suspiciously similar to orders proffered in *Manez*, in which the MDL court had declared that those plaintiffs had deliberately and fraudulently obtained the dismissals for the express purpose of defeating an FNC motion. Then, on the same day it denied the FNC motion, the MDL court suggested to the JPML that the cases be remanded immediately to the district courts *a quo*.

14

As a result of that remand, the MDL court never ruled on petitioners' motion to reconsider, but just dismissed the motion as moot long after the matter had been remanded to the transferor court and after the MDL court no longer had jurisdiction.[18] The transferor court never considered the merits of the motion to reconsider, but only denied that motion on the mistaken belief that the court lacked discretion to reach the merits.[19]

Petitioners also lack any other adequate means to attain relief. They attempted to have the MDL court's decision certified for appeal to the Seventh Circuit and asked for reconsideration by both the MDL court and the transferor court. All of these attempts were rejected.[20]

We also held en banc in *Volkswagen* that, in these FNC cases, mandamus

---

[18] Because the motion to reconsider involved only the handful of plaintiffs in the instant case, a ruling by the MDL court would not have had broad implications for the caselaw on MDL proceedings. That serves as another reason why that court should have ruled on the motion to reconsider.

[19] Reconsideration by the transferor court would have posed no threat to the MDL process and, in fact, would have fostered the salutary goal of consistency in that process. The inconsistencies between the treatment of the *Manez* and the instant plaintiffs are striking.

First, the MDL court dismissed *Manez* on FNC grounds by concluding that Mexico is an available forum under Fifth Circuit precedent. Second, after the Seventh Circuit had remanded *Manez*, the MDL court ruled that those plaintiffs had acted in bad faith in securing fraudulent dismissals in Mexico to strengthen their position in the MDL proceedings; the MDL court thus dismissed again, on FNC grounds, stating that Mexico was available.

Third, the MDL court departed from its earlier ruling and denied the present petitioners' FNC motion on the ground that they had not proven their contention that Mexico is available. Fourth, in a bizarre reversal, the court granted an FNC motion in the almost-identical case of *Cantu*, concluding that, in reliance on Fifth Circuit caselaw, Mexico is an available alternative forum.

[20] We note our distaste at plaintiffs' argument that this case should not be considered by this court because it should have been appealed to the Seventh Circuit. Petitioners moved for leave to take an interlocutory appeal to the Seventh Circuit, but plaintiffs opposed the motion. Plaintiffs' wish was granted, and the Seventh Circuit declined to hear the case. It is disingenuous at best for them now to claim that this court's jurisdiction was improper, when they opposed all other avenues for reconsideration of the decision.

is appropriate on this prong because, if the issue is argued only on any eventual direct appeal, there is no way to show that the outcome of the case would have been different, and any inconvenience to the parties "will already have been done by the time the case is tried and appealed." *Id.* at 318-19. "[T]he writ is not here used as a substitute for an appeal, as an appeal will provide no remedy for a patently erroneous failure to transfer venue." *Id.* at 319. We were straightforward in *Volkswagen* that these FNC cases are in the "no other means to attain relief" category. *Id.* at 318.

Additionally, the petitioners have a clear and indisputable right to the writ. That follows from our finding of a clear abuse of discretion: "If the district court clearly abused its discretion . . . in denying [the] motion, then [the petitioners'] right to issuance of the writ is necessarily clear and indisputable." *Id.* at 311. There was a clear abuse of discretion, so petitioners are entitled to a writ of mandamus.

Finally, we must be satisfied that the writ is appropriate in this circumstance. A writ of mandamus is "supervisory in nature and [is] particularly appropriate when the issues also have an importance beyond the immediate case." *Id.* at 319 (citation omitted). There are at least two other similar cases pending in the MDL court that were initially filed in Texas. In addition, other suits may be filed in our district courts involving the question whether Mexico is an available forum in our circumstances. This issue is not specific to this case but is relevant for a variety of similar cases that have arisen or may arise in the district courts of this circuit. Recognizing this, a writ of mandamus is called for here. Considering the return-jurisdiction clause and our the binding precedent, it is plain that this trial should not take place in American courts unless a Mexican forum is unavailable.

For all of the above reasons, the district court erred in not overruling the MDL court's FNC decision, and that error is serious enough to require manda-

mus as the appropriate relief. We direct the district court to render a judgment of dismissal without prejudice, because Mexico is an available and appropriate forum. Plaintiffs can re-file this suit and proceed to trial in the Western District of Texas on a sufficient showing that the Mexican courts are unavailable for this litigation despite petitioners' submission to jurisdiction there. Plaintiffs must litigate in good faith in Mexican courts, and evidence showing otherwise may justify sanctions against plaintiffs and their counsel.

The petition for writ of mandamus is GRANTED.