# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50404

United States Court of Appeals
Fifth Circuit

**FILED**

May 27, 2014

Lyle W. Cayce
Clerk

THOMAS W. MCKAY; LETICIA MCKAY,

Plaintiffs – Appellants

v.

NOVARTIS PHARMACEUTICAL CORPORATION,

Defendant – Appellee

Appeal from the United States District Court
for the Western District of Texas

Before WIENER, ELROD, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Thomas and Leticia McKay's lawsuit against Novartis Pharmaceutical Corporation ("Novartis") has spanned eight years and two forums. Originally filed by Thomas McKay in the Western District of Texas, this case was transferred by the Judicial Panel on Multidistrict Litigation ("MDL") to the Middle District of Tennessee in May 2006 as part of the ongoing multidistrict litigation involving, *inter alia*, two drugs manufactured and distributed by Novartis. The MDL court granted partial summary judgment for Novartis and made two significant rulings: (1) Texas law applied to the McKays' case, and (2) Tex. Civ. Prac. & Rem. Code § 82.007(a)—which provides manufacturers a rebuttable presumption against liability for failing to warn—foreclosed the McKays' failure to warn claims. On remand, the district court in Texas (the

No. 13-50404

"remand court") granted summary judgment on the McKays' remaining claims. Concluding that neither court erred, we AFFIRM.

I.

As part of Thomas McKay's treatment for prostate cancer, he took two drugs—Aredia and Zometa. Novartis manufactures both drugs and markets them accompanied by warnings approved by the FDA. In 2006, McKay sued Novartis in the Western District of Texas. He alleged that Aredia and Zometa caused him to develop "osteonecrosis of the mandible or jaw bone [sic]." As a result of this condition, McKay has lost a number of teeth, has a large, exposed bone protruding through his gums, and has undergone many corrective surgeries on his jawbone. His complaint faults Novartis for, among other things, failing to notify the public and physicians of "the possibility of suffering osteonecrosis of the jaw" until 2004, and failing to notify dental professionals until 2005. McKay's claims sound in strict liability, negligence, breach of express warranty, and breach of implied warranty. McKay subsequently amended his complaint to add his wife, Leticia McKay as a plaintiff and to add claims for failure to warn and loss of consortium.

In June 2008—almost a year and a half after the McKays amended their complaint—Novartis moved for partial summary judgment on the McKays' failure to warn claims in the MDL court.[1] Novartis relied on Tex. Civ. Prac. & Rem. Code § 82.007(a), which provides defendant manufacturers a rebuttable presumption against liability when plaintiffs assert failure to warn claims involving drugs accompanied by FDA-approved warnings.

The MDL court granted Novartis's motion for partial summary judgment. First, the MDL court applied the transferor forum's choice of law

---

[1] Novartis also moved for partial summary judgment on eight other Texas plaintiffs' failure to warn claims.

2

rules (Texas) to determine that Texas substantive law governed the McKays' case. Second, the MDL court denied the McKays' Federal Rule of Civil Procedure 56(d)[2] motion for additional discovery on the choice of law issue because "McKay has not shown that, for specified reasons, he cannot present facts essential to justify his position concerning the choice of substantive law applicable to his claims." Finally, the MDL court applied § 82.007(a)'s rebuttable presumption and granted partial summary judgment on the McKays' failure to warn claims. The MDL court recognized that the FDA approved the warnings accompanying Aredia and Zometa and that "[n]either side claims that any of the specifically enumerated ways to rebut the presumption applies in this instance except subsection (b)(1)." Section 82.007(b)(1) provides that a plaintiff may rebut § 82.007(a)'s presumption against liability if the plaintiff establishes, among other things, that a defendant "withheld from or misrepresented to the United States Food and Drug Administration required information that was material and relevant to the performance of the product and was causally related to the claimant's injury." § 82.007(b)(1). Correctly anticipating our decision in *Lofton v. McNeil Consumer & Specialty Pharmaceuticals*, 672 F.3d 372 (5th Cir. 2012), the MDL court held that federal law preempted one application of § 82.007(b)(1). *See Lofton*, 672 F.3d at 380 (holding that § 82.007(b)(1) is preempted "unless the FDA itself has found fraud"). The MDL court granted summary judgment on the McKays' claims premised on Novartis's "failure to provide adequate warnings or information," holding them precluded by § 82.007(a)'s unrebutted presumption.

---

[2] Rule 56(f) has been recodified "without substantial change" as Rule 56(d). *See Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 869 (5th Cir. 2010).

No. 13-50404

On May 22, 2011—almost three years after the MDL court's summary judgment ruling—the McKays moved the MDL court to reconsider under Rule 60(b)(6). The MDL court denied the McKays' motion because their purportedly "new" evidence was available prior to discovery and had been available long before the McKays filed their Rule 60(b) motion. On August 23, 2011, the MDL Panel remanded the case to the Western District of Texas.

On remand, Novartis recognized that "[t]he MDL court's order did not specify the particular counts from each case's complaint that were resolved by its order," and moved for summary judgment on the McKays' remaining claims "because they all involve the adequacy of [Novartis's] warnings or information."[3] The "remand court" interpreted the MDL court's order as deciding that § 82.007(a)'s presumption applied to the McKays' complaint, leaving open only "which of Plaintiff's claims rest on allegations that Novartis failed to warn of Aredia and Zometa's dangerous side effects." Noting that it would "not disturb or revisit the findings made by the MDL court," the remand court recognized that if any of the McKays' remaining claims were premised on inadequate warnings, then they did not survive the MDL court's ruling.

The remand court rejected the McKays' attempt to rebut § 82.007's presumption under § 82.007(b)(3)–(5) by providing evidence of off-label promotion because the McKays did not make this argument in the MDL court and the MDL court's prior ruling was the law of the case. Alternatively, the remand court held that the McKays' evidence did not create a genuine issue of fact on off-label promotion. The remand court next rejected the McKays' argument that, *Lofton* requires that § 82.007 be struck. Again, the remand court held that the MDL court had already decided the applicability of

---

[3] Novartis, however, had explicitly moved for summary judgment in the MDL court on Counts I, II, III, IV, and V, and the MDL court granted Novartis's motion.

4

No. 13-50404

§ 82.007(a)'s rebuttable presumption but alternatively found that the remaining provisions of § 82.007 were severable from § 82.007(b)(1)'s invalid application.

The remand court then held that most of the McKays' remaining claims were premised on Novartis's failure to warn and therefore were precluded by § 82.007(a)'s presumption against liability, as decided by the MDL court. Although it determined that the McKays' breach of warranty claims were not premised on inadequate warnings, the remand court nevertheless granted summary judgment on these claims because the McKays failed to provide Novartis with statutorily required notice. Finally, having dismissed all of the underlying claims, the remand court granted Novartis summary judgment on the McKays' loss of consortium claim. This appeal followed.

## II.

The McKays assert on appeal that the MDL court abused its discretion by denying their Rule 56(d) motion to continue summary judgment and by "subsequently . . . refusing to apply the overwhelming facts to that decision." The McKays also fault the remand court for refusing to consider evidence of off-label promotion under § 82.007(b)(3) and rejecting their argument that § 82.007 should be struck down in its entirety. Finally, they contend that the remand court erred when it granted summary judgment on their breach of warranty claims.

## A.

We begin with the McKays' appeal of the MDL court's denials of their Rule 56(d) and Rule 60(b) motions.

5

No. 13-50404

1.

In opposition to Novartis's motion for summary judgment in the MDL court, the McKays disputed the application of Texas substantive law to their claims. They filed a Rule 56(d) motion for additional time to discover McKay's own medical records in order to adequately brief which state has the "most significant relationship" to the litigation. The MDL court denied the McKays' Rule 56(d) motion because the information that the McKays requested—information concerning Thomas McKay's own treatment—was already available to them:

> The information concerning McKay's infusions, prescriptions and other treatments, however, is available to McKay without any need for formal discovery. Indeed, that information became available to McKay when the infusions, prescriptions and treatments occurred. The issues concerning where and how Plaintiff McKay's injuries occurred involve information in the possession of McKay and his treating health care providers, and there has been no showing that anything prevented Plaintiff from obtaining that information before he filed this action or, more specifically, in response to Defendant's Motion.

On appeal, the McKays contend that this ruling was an abuse of discretion because Thomas McKay did not have his medical records at the time of discovery, and because discovery was stayed.

We review a denial of a Rule 56(d) motion for abuse of discretion. *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Rule 56(d) motions are "broadly favored and should be liberally granted." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010). The Rule 56(d) movant "must

set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (quoting *C.B. Trucking, Inc. v. Waste Mgmt. Inc.*, 137 F.3d 41, 44 (1st Cir. 1998)). If the requesting party "has not diligently pursued discovery, however, she is not entitled to relief" under Rule 56(d). *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001).

The MDL court "acted within its discretion in concluding that [the McKays] had not pursued discovery diligently enough to warrant relief under" Rule 56(d). *Beattie*, 254 F.3d at 606. McKay did not need formal discovery to request his own medical records; therefore, it is of no moment that discovery was stayed at the time of summary judgment. *See, e.g.*, *St. Bernard Parish v. Lafarge N. Am., Inc.*, No. 13-30030, 2013 WL 6671807, at \*2 (5th Cir. Dec. 19, 2013) (unpublished) ("The discovery needed by the Parish—its own final expert testimony—was not dependent on the defendant but rather facts and reports completely within its control."). The fact that the McKays sought formal discovery of evidence that was available to them through informal means is what distinguishes this case from *Xerox Corp. v. Genmoora Corp.*, where the evidence requested was in the hands of the opposing party. 888 F.2d 345, 354 (5th Cir. 1989) (noting that the requested discovery "must come largely, if not entirely, from the ex-directors"). Moreover, McKay filed this suit in 2006, and Novartis did not move for summary judgment until 2008. This two-year period calls into question the McKays' attempt to frame Novartis's motion as a "surprise summary judgment." *See, e.g.*, *Beattie*, 254 F.3d at 606 (requesting party did not diligently pursue discovery as to gain Rule 56(d) relief when she

7

"had several months, from the time she sued, to depose the board members, who are named defendants").[4]

"A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation marks omitted). The MDL court did not clearly abuse its discretion here.

2.

The McKays next fault the MDL court for "not correcting the [Rule 56(d)] error when, discovery in hand, Plaintiff moved for reconsideration" under Rule 60(b)(6) almost three years after the MDL court granted partial summary judgment. In their Rule 60(b)(6) motion, the McKays insisted that "new evidence revealed through discovery, and unavailable in the Plaintiff's medical records, demonstrates convincingly that California law should be applied to Plaintiff's failure to warn claim." The MDL court denied their motion.

The McKays moved under Rule 60(b), but "[b]y its own terms, Rule 60(b) is limited to relief from a 'final' judgment or order." *Zimzores v. Veterans*

---

[4] Because Appellants were not diligent, we need not address whether they have shown that their additional discovery would have created a genuine issue of fact. *Beattie*, 254 F.3d at 606; *St. Bernard Parish*, 2013 WL 6671807, at \*2–3 (holding that district court did not abuse its discretion and recognizing that "[b]ecause the Parish did not diligently pursue the discovery it needed to prosecute its claims, we need not address why the Parish needed additional discovery to create a genuine issue of fact"). Nevertheless, the MDL court did account for McKay's purported connections outside of Texas when deciding the choice of law issue:

> McKay asserts that he received some of his Aredia and Zometa doses in California, and his dentist is in Mexico. McKay does not dispute that he has lived in Texas since at least 1987. McKay does not dispute that numerous Texas physicians have evaluated and/or treated him for prostate cancer. McKay also admits that several Texas physicians have prescribed and/or administered Aredia and/or Zometa to him.

Even considering the McKays' assertions about the location of his treatment, then, the MDL court found Texas law applicable.

*Admin.*, 778 F.2d 264, 266 (5th Cir. 1985). "Interlocutory orders," such as grants of partial summary judgment, "are not within the provisions of 60(b), but are left within the plenary power of the court that rendered them to afford such relief from them as justice requires." *Id.*; *see also Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir. 1970) (noting that an "interlocutory order" is "not subject to being vacated under Rule 60(b)").[5] Rule 54(b) provides that interlocutory orders may be "revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "The standard for reviewing the vacation of an interlocutory order is hence not whether the stringent Rule 60(b) requirements are met, but is rather whether the district court abused its discretion." *Zimzores*, 778 F.2d at 267. The McKays therefore argue that it is "an abuse of discretion to refuse to reexamine an interlocutory order when the evidence is clear it was erroneous." *See, e.g.*, *Xerox*, 888 F.2d at 355–57.

---

[5] Even if Rule 60(b) were a proper vehicle to attack the prior grant of partial summary judgment, the McKays' motion was procedurally defective for other reasons. For instance, "relief under 60(b)(6) is mutually exclusive from relief available under sections (1)-(5)," *Hesling v. CSX Transp. Inc.*, 396 F.3d 632, 643 (5th Cir. 2005), and Rule 60(b)(2) provides an avenue of relief for when a party has "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). Therefore, it was improper for the McKays to utilize Rule 60(b)(6) to introduce newly discovered evidence because, as discussed, reasonable diligence would have led to its discovery. The McKays' Rule 60(b)(6) motion is also defective because had the McKays filed a Rule 60(b)(2) motion it would have been untimely. Fed. R. Civ. P. 60(c)(1) (providing that motions under Rule 60(b)(2) must be filed "no more than a year after the entry of the . . . order"); *see Wilson v. Johns Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989) ("We have held that [r]elief under subsection (6) is not available to a movant where . . . the relief sought would have been, if not for the Rule's time limits, within the coverage of another of the subsections of the Rule." (internal quotations omitted)). Moreover, the district court faulted the McKays for filing their Rule 60(b)(6) motion over 18 months after the allegedly unavailable deposition testimony became available. A district court is provided wide discretion in determining whether a Rule 60(b) motion is filed within a reasonable time, and "[w]hat constitutes a reasonable time under Rule 60(b) depends on the particular facts of the case in question." *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 119 (5th Cir. 1992).

No. 13-50404

The MDL court's application of Texas choice of law principles, however, was not clearly erroneous, and its refusal to reconsider its ruling was not an abuse of discretion. "Texas uses the Restatement's 'most significant relationship' test to decide choice-of-law issues." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000). Factual matters to be considered when determining which state has the "most significant relationship" include where the injury occurred, where the conduct causing the injury occurred, where the parties reside, and where the parties' relationship is centered. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979).

McKay's connection to Texas is manifest in the record. First, he is a Texas citizen who resides in Texas. Second, "McKay does not dispute that numerous Texas physicians have evaluated and/or treated him for prostate cancer." Third, "McKay also admit[ted] that several Texas physicians have prescribed and/or administered Aredia and/or Zometa to him." Fourth, McKay would have Zometa shipped to his house in Texas. Fifth, a majority of McKay's Aredia and Zometa infusions took place in Texas. Finally, McKay's jaw condition manifested in Texas. The McKays do not dispute these Texas connections, but assert on appeal that they are outweighed by the evidence showing that a California physician, Dr. Leibowitz, prescribed and treated him in California, "[a]lmost all infusions of Aredia and Zometa were purchased in California and his entire medical course was directed from there," and McKay "received the bulk of his infusions [in California]."

McKay's contacts with Dr. Leibowitz do not override his Texas connections to make application of Texas law clearly erroneous. *See, e.g.*, *Guillory on Behalf of Guillory v. United States*, 699 F.2d 781, 784–86 (5th Cir. 1983) (noting that "the district court should have placed great weight upon the fact that Louisiana citizens were involved in this case" in making a choice of law inquiry, and recognizing that a state has a "strong interest in insuring that

its citizens and residents are adequately compensated for others' tortious conduct"). Although McKay received some of his treatment in California, and Dr. Leibowitz dictated the progression of McKay's prescriptions there, it is undisputed that McKay resided in Texas and received treatment multiple times in Texas, and that his condition manifested itself in Texas. The district court did not clearly err by determining that Texas had the most significant relationship to the occurrence in question. *See, e.g.*, *Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990) ("Texas has a significant interest in remedying civil injury to Texas citizens through tort liability and also in defining the outer limits of tort liability."). Thus, the McKays' evidence is not an "overwhelming showing" allowing the MDL court to know "positively . . . that [its] earlier grant of summary judgment could no longer be justified." *Xerox*, 888 F.2d at 356.[6]

B.

As noted above, Novartis recognized on remand that "[t]he MDL court's order did not specify the particular counts from each case's complaint that were resolved by its order," and moved for summary judgment on the McKays' remaining claims "because they all involve the adequacy of [Novartis's] warnings or information." The remand court recognized that "the adequacy of the Novartis' warnings has been previously litigated and decided by the MDL court"; therefore, it held that the MDL court's ruling that § 82.007(a)'s

---

[6] The McKays do not contend on appeal that the MDL court's choice-of-law determination was incorrectly decided when it issued its original order. Although their notice of appeal references the MDL court's grant of partial summary judgment, their brief asserts error only in the Rule 56(d) denial and the MDL court's failure to reconsider the partial summary judgment grant in light of the new evidence presented in their Rule 60(b) motion. "[A]n appellant abandons all issues not raised and argued in its initial brief on appeal," *Webb v. Investacorp, Inc.*, 89 F3d 252, 257 n.2 (5th Cir. 1996), and "[w]e have held repeatedly that we will not consider issues not briefed by the parties." *Johnson v. Sawyer*, 120 F.3d 1307, 1315 (5th Cir. 1997).

No. 13-50404

presumption against liability precluded all of the McKays' counts premised on Novartis's failure to warn.

The McKays insisted that the remand court erred by refusing to consider two new arguments it made to the remand court regarding § 82.007(a)'s presumption. First, the McKays asserted that they could rebut the presumption by providing evidence of off-label promotion under § 82.007(b)(3).[7] Second, they argued that *Lofton*'s holding that federal law preempted one application of § 82.007(b)(1) required the invalidation of § 82.007's remaining provisions.[8] We have instructed that when "reviewing transferee court decisions under the law of the case doctrine, transferor courts should rarely reverse, because any widespread overturning of transferee court decisions would frustrate the principle aims of the MDL process and lessen the system's effectiveness." *In re Ford Motor Co.*, 591 F.3d 406, 411 (5th Cir. 2009). "The law of the case doctrine requires that courts not revisit the determinations of an earlier court unless (i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the

---

[7] Section 82.007(b)(3) provides that a claimant may rebut the presumption by establishing that:

> (A) the defendant recommended, promoted, or advertised the pharmaceutical product for an indication not approved by the United States Food and Drug Administration; (B) the product was used as recommended, promoted, or advertised; and (C) the claimant's injury was causally related to the recommended, promoted, or advertised use of the product.

[8] The McKays do not argue on appeal that the MDL court's grant of partial summary judgment and subsequent denial of their motion for reconsideration were erroneous because of their arguments concerning § 82.007(b)(3) and § 82.007(a)'s severability. This is because they did not make these arguments to the MDL court when opposing summary judgment or moving for reconsideration. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."). Because they do not challenge the underlying summary judgment ruling on these issues, the McKays' appeal on these grounds is confined to the remand court's refusal to countenance their new arguments under the law of the case.

No. 13-50404

law applicable to such issues, or (iii) the decision was clearly erroneous and would work . . . manifest injustice." *Id.* at 411–12 (internal quotations omitted); *see also Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983) (Rubin, J.) ("The law of the case doctrine is closely related to the principle of *res judicata*. The latter prevents collateral attack on the result of a completed lawsuit between the same parties; the former prevents collateral attacks against the court's rulings during the pendency of a lawsuit.").

Indeed, the McKays conceded to the remand court that the law of the case applied: "The Court may hold the striking of the failure to warn count III is the law of the case and need not revisit it, but to the extent the remaining claims have elements of failure to warn as part of their make up or because of a Novartis defense . . . they ought not be dismissed as there is evidence of off-label promotion to Mr. McKay's prescribers." This concession is more determinative than the McKays perceive because the MDL court did not limit its summary judgment to Count III of the McKays' complaint. Instead, the MDL court held that all of the McKays' claims premised on Novartis's "failure to provide adequate warnings or information" were precluded under § 82.007(a)'s unrebutted presumption. The McKays' acknowledgment that § 82.007(a)'s presumption was unrebutted as to Count III necessarily assumes that none of the avenues to rebut the presumption in § 82.007(b) applied and that § 82.007 is severable from § 82.007(b)(1)'s invalid application. Put another way, if § 82.007's presumption applied to one of the McKays' failure to warn counts, it would necessarily apply to the remainder of their claims premised on failure to warn. The remand court was correct not to revisit § 82.007(a)'s applicability and to decide only which of the McKays' claims were premised on Novartis's failure to provide adequate warnings or information.

Even without the McKays' concession, the remand court did not clearly err or abuse its discretion when it applied the law of the case. *See In re Ford*

13

*Motor*, 591 F.3d at 412 ("Because the transferor court should have recognized [the MDL court's] serious error, its decision not to vacate its decision regarding FNC was also clearly erroneous."); *see also Williams v. Bexar Cnty., Tex.*, No. 98-51187, 2000 WL 1029171, at *2 (5th Cir. July 14, 2000) (unpublished) ("We therefore review the decision by a trial judge to reconsider a prior trial judge's interlocutory ruling for abuse of discretion."). First, the McKays have not established that the evidence before the remand court was substantially different than that before the MDL court. As to their § 82.007(b)(3) argument to the remand court, the McKays rely on testimony from Dr. Aboud taken on October 20, 2009, Dr. Valilis taken on October 22, 2009, and Dr. Leibowitz taken on October 29, 2009.[9] This testimony was available to the McKays almost two years before they filed their May 22, 2011 motion *asking the MDL court* to reconsider its partial summary judgment order. Because this evidence was available when the McKays moved the MDL court to reconsider its ruling on § 82.007, the evidence available in the remand court was not substantially different.

Second, because *Lofton* affirmed the MDL court's interpretation of § 82.007, the McKays do not argue that there was an intervening "*contrary* decision of the law applicable to such issues." *In re Ford Motor*, 591 F.3d at 411–12 (emphasis added). Third, the McKays cannot show that the MDL

---

[9] Indeed, after the MDL court declined to reconsider its prior ruling, Novartis moved for summary judgment on the McKays' remaining claims while still in the MDL court. In their response, the McKays acknowledged that the law of the case applied to the MDL court's ruling on their failure to warn claim, but for the first time raised their new arguments to § 82.007's applicability. The MDL court did not rule on this motion but instead suggested remanding the McKays' case. The MDL panel then remanded the McKays' case to Texas on August 23, 2011. That the McKays attempted to raise these arguments before the MDL court in their response to Novartis's second summary judgment motion—though after they had already moved to reconsider the MDL court's original ruling on § 82.007's applicability—indicates that the evidence before the remand court is not substantially different as to deviate from the law of the case.

court's decisions were clearly erroneous for failing to consider arguments that the McKays could have raised but did not. As the MDL court recognized: "Neither side claims that any of the specifically enumerated ways to rebut the presumption applies in this instance except subsection (b)(1), so the Court need address only (b)(1). If Plaintiffs are precluded, by preemption or otherwise from establishing the facts required under subsection (b)(1), Plaintiffs cannot rebut the presumption." The McKays moved under Rule 56(d) for more time on the choice of law issue, but they did not request more time for discovery on the § 82.007(b)(3) issue; they proceeded only under § 82.007(b)(1). Moreover, the McKays did not attempt to invoke § 82.007(b)(3) or urge that the entirety of § 82.007(a) must be invalidated in their motion for reconsideration filed almost three years after the MDL court's summary-judgment ruling. *Cf. Fuller v. Donahoo*, No. 95-10784, 1996 WL 459784, at *1 (5th Cir. July 24, 1996) (unpublished) (applying law of the case in the appeal context and noting "Fuller's argument . . . could have been raised in the original appeal. This argument does not constitute a new or different ground for relief from the order. Fuller waived this argument by not raising it in his first appeal.").

"The law of the case doctrine requires attention to the special authority granted to the multidistrict transferee judge and ensures that transferor courts respect the transferee court's decisions." *In re Ford Motor*, 591 F.3d at 411. Allowing the McKays to relitigate in the remand court issues decided by the MDL court with arguments that could have been raised but were not would "frustrate the purposes of centralized pretrial proceedings." *Id.* at 411 (quoting Manual for Complex Litigation § 20.133). Thus, the remand court properly applied the law of the case when it refused to reconsider the MDL court's rulings that § 82.007 applied to the McKays' failure to warn claims. *See, e.g., Lincoln Gen. Ins. Co. v. De La Luz Garcia*, 501 F.3d 436, 442 (5th Cir. 2007) ("[G]enerally speaking, we will not consider an issue raised for the first time

in a Motion for Reconsideration."); *see also Hightower v. Aramark Educ. Servs., L.L.C.*, 537  F. App'x 489, 490 (5th Cir. 2013); *RLI Ins. Co. v. Maxxon Sw. Inc.*, 108 F. App'x 194, 200–01 (5th Cir. 2004) (unpublished).

C.

The remand court held that § 82.007(a) did not preclude the McKays' breach of warranty claims because they were distinct from their failure to warn claims. The remand court decided that these claims also failed, however, because the McKays did not comply with Texas's statutory notice requirements. This court reviews the remand court's grant of summary judgment on the McKays' warranty claims *de novo. Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 599 (5th Cir. 2010).

To recover on a breach of warranty claim in Texas, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Tex. Bus. & Com. Code § 2.607(c)(1). The burden of "alleging and proving proper notice" is on the buyer, and "[f]ailure to notify the seller of the breach, thereby allowing the seller an opportunity to cure, bars recovery on the basis of breach of warranty." *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 189 (Tex. App.— Dallas 1996, no writ). "It is not essential under [§ 2.607] that the buyer's notification of defective product specifically set forth in detail every objection the buyer has to the fitness of the product; it is only necessary that the seller be informed that there is a claimed breach of the warranty of fitness." *Melody Home Mfg. Co. v. Morrison*, 502 S.W.2d 196, 203 (Tex. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.).

The McKays argue that they satisfied the notice requirements because (1) Dr. Leibowitz, as McKay's agent, notified Novartis, (2) a class action was filed against Novartis "to which Mr. McKay would have been in the class," and (3) McKay did not have to notify Novartis because his notification to Dr.

No. 13-50404

Leibowitz—an intermediate seller—suffices under the statute. We find these arguments unavailing.

First, even though Dr. Leibowitz did notify Novartis of the problems his patients were experiencing with the drugs, there is no evidence that he alerted Novartis that McKay in particular had suffered an injury. The Texas Court of Appeals has noted "[t]he manufacturer must be made aware of a problem with a particular product purchased by a particular buyer." *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 201–02 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Therefore, Dr. Leibowitz's general notifications of problems with Novartis's drugs do not suffice. Second, "commencement of litigation" does not satisfy the notice requirement. *Boeran*, 110 S.W.3d at 201–02; *Wilcox v. Hillcrest Memorial Park of Dall.*, 696 S.W.2d 423, 424–25 (Tex. App.—Dallas 1985, writ ref'd n.r.e) ("It would be untenable to allow a buyer, such as Wilcox, to recover damages for breach of warranty from a remote seller or manufacturer who was never even made aware that the product in question was defective and who, consequently, never had an opportunity to remedy the defect to the buyer's satisfaction before litigation was commenced or even to inspect the product to ascertain if indeed a defect existed."). That the notification requirement must be satisfied before litigation is consistent with § 2.607's purpose to "inform[] the seller that the transaction is claimed to involve a breach, and thus open[] the way for normal settlement through negotiation." § 2.607 cmt. 4.

Third, although the Texas Supreme Court has not decided whether notice must be given to a remote manufacturer or seller to satisfy § 2.607's requirements, *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 674 & n.14 (Tex. 2004), the majority of Texas intermediate courts have held that a buyer must notify both the intermediate seller and the manufacturer. *See, e.g., Bailey v. Smith*, No. 13-05-085-CV, 2006 WL 1360846, at *4–5 (Tex. App.—Corpus

17

Christi May 18, 2006, no pet.) ("We agree with our sister courts in Dallas and Houston, following the plain reading of the statute and concluding that no policy concerns are presented in this case requiring that we advance a remedy additional to that available against an immediate seller, where only that immediate seller has been notified."); *Borean*, 110 S.W.3d at 199 ("It is difficult to conceive how the term 'seller' could be read broadly to include a remote manufacturer when rejecting a privity requirement . . . but then read narrowly under section 2.607 so as to require that a buyer give notice only to an immediate seller. The drafters of the UCC did not read section 2.607 as referring solely to the relationship between a buyer and an immediate seller."); *Wilcox*, 696 S.W.2d at 424 (expressly rejecting an interpretation of § 2.607 that allows the notice requirement to be satisfied when given from buyer to immediate seller); *see also In re Mirapex Prods. Liab. Litig.*, 735 F. Supp. 2d 1113, 1124 (D. Minn. 2010) ("The Court finds that, if the Texas Supreme Court were confronted with this issue, it would adopt the majority position, and find notice to a remote manufacturer to be a prerequisite to suit.").

In *Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 888–89 (Tex. Civ. App.—El Paso 1979, no writ), the court interpreted § 2.607 to "appl[y] only as between a buyer and his immediate seller." Subsequent cases have noted that *Vintage Homes* interpreted a different version of § 2.607:

> We note that [*Vintage Homes*] was based on a commentary which discussed a version of section 2.607 that differed in an important respect from the version enacted into Texas law as Tex. Bus. & Com. Code § 2.607(c)(1). The version discussed by that commentary required that the buyer give note to "his" seller, while the Texas version of section 2.607(c)(1) requires that notice be given to "the" seller.

*Wilcox*, 696 S.W.2d at 425. Courts disagreeing with *Vintage Homes* also note that requiring notice to the manufacturer is consistent with the purposes of § 2.607's notification because "[i]f the manufacturer is to be held responsible

for the buyer's losses, it needs the protection of timely notice at least as much as the buyer's immediate seller." *Boeran*, 110 S.W.3d at 199 (quoting James J. White & Robert S. Summers, Uniform Commercial Code § 11–10 (4th ed. 1995)); *see also id.* ("The drafters of the UCC did not read section 2.607 as referring solely to the relationship between a buyer and an immediate seller."). Although the Texas Supreme Court has not decided this issue, the weight of intermediate Texas authority interprets the applicable version of § 2.607 to require McKay to notify Novartis before suing for breach of warranty. *See Birmingham Fire Ins. Co. of Pa. v. Winegardner & Hammons, Inc.*, 714 F.2d 548, 550 (5th Cir. 1983) ("[W]hen the supreme court of a state has not spoken to a particular issue, the well-established practice of this Circuit is to follow the opinion of the highest court which *has* written on the matter."); *see also Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013).

Thus, the remand court properly granted summary judgment on the McKays' warranty claims.[10]

### III.

As neither the MDL court nor the remand court erred reversibly, we AFFIRM.

---

[10] Because the McKays' warranty claims fail to meet the statutory notice requirements we need not consider Novartis's alternative argument that these claims also fall within the scope of § 82.007.